UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:17-cr-00157-JAW |
| | ) | |
| CAMERON SOTO | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO SEVER**

Charged by indictment of the sale of fentanyl on one day causing death and the sale of fentanyl the next day, the defendant seeks to dismiss the sale causing death count and to sever counts for trial. His theory of dismissal is that the sale causing death count is fatally flawed because it does not allege that he intended to cause death and his theory for severance is that the trial of sale causing death count would be prejudicial to the trial of the sale count. The Court denies both motions. The Court denies the motion to dismiss because the law does not require that the Government prove that a defendant knew that the sale would cause death. The Court denies the motion to sever because the counts were properly joined and any prejudice from the simultaneous trial of both counts can be addressed by proper jury instructions.

**I. BACKGROUND**

On June 6, 2017, the Government filed a criminal complaint in the District of Maine asserting three Counts against Cameron Soto:

### Count 1

On about March 14, 2017, in the District of Maine . . . Cameron Soto knowingly and intentionally distributed a mixture or substance containing fentanyl, in violation of Title 21, United States Code, Section

841(a)(1). It is further alleged that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(C) apply to the conduct described herein . . . . As a result of the distribution of fentanyl committed by . . . Cameron Soto and charged in Count 1 of this Complaint, death or serious bodily injury did result from the use of a controlled substance, namely fentanyl.

### Count 2

On about March 15, 2017, in the District of Maine . . . Cameron Soto knowingly and intentionally distributed a mixture or substance containing fentanyl, in violation of Title 21, United States Code, Section 841(a)(1). It is further alleged that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(C) apply to the conduct described herein.

### Count 3

On about March 14, 2017, in the District of Maine . . . Cameron Soto having been conviction of the following crime punishable by a term of imprisonment exceeding one year, specifically:

> Unlawful Trafficking in Scheduled Drugs, in the Knox County Superior Court, Docket Number ROCSC-CR-2014-00001, judgment having entered on about September 22, 2014

knowingly possessed in and affecting commerce a Smith & Wesson 9mm pistol bearing serial number FXX0765. In violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2).

*Criminal Compl.* at 1-2 (ECF No. 3).

On November 14, 2017, a federal grand jury indicted Mr. Soto on the same three Counts and for the same conduct alleged in the Criminal Complaint. *Indictment* (ECF No. 32). On December 12, 2018, Mr. Soto moved for an interim status conference and to continue his case to April 1, 2019. *Def.'s Mot. to Continue Trial and Schedule Interim Status Conference* (ECF No. 88). On December 13, 2018, the Court granted the motion. *Speedy Trial Order* (ECF No. 89). On January 4, 2019,

the Court held a status conference at which Mr. Soto confirmed that he intended to file motions and the Court set a filing schedule accordingly. *Min. Entry* (ECF No. 91).

On February 11, 2019, Mr. Soto filed a motion to sever and a motion to dismiss Count One. *Def.'s Mot. To Sever Count 1* (ECF No. 97) (*Def.'s Mot. to Sever*); *Def.'s Mot. to Dismiss Count 1* (ECF No. 98) (*Def.'s Mot. to Dismiss*). On March 20, 2019, the Government filed responses in opposition to Mr. Soto's motions. *Gov't's Resp. To Def.'s Mot. To Dismiss Count 1* (ECF No. 103) (*Gov't's Opp'n to Mot. to Dismiss*); *Gov't's Resp. To Def.'s Mot. To Sever* (ECF No. 104) (*Gov't's Opp'n to Mot. to Sever*).

## II. THE PARTIES' POSITIONS

### A. Motion to Dismiss

#### 1. Defendant's Memorandum[1]

Mr. Soto argues Count One of the Indictment violates his Fifth and Sixth Amendment rights because it charges him with a criminal offense that includes a mandatory minimum sentence but requires no scienter requirement for the offense's "death resulting" enhancing element. *Def.'s Mot. to Dismiss* at 1. Mr. Soto acknowledges that "[w]hile there is no absolute prohibition against strict liability crimes, the common law tradition . . . disfavors such crimes that the Supreme Court 'will infer, absent an express indication to the contrary, that Congress intended such a mental-state element.'" *Id.* at 2 (quoting *Torres v. Lynch*, 136 S. Ct. 1619, 1631 (2016)). Mr. Soto says Congress has not expressly indicated that it intended § 841(b)(1)(C)'s "death resulting" element to be a strict liability crime, and that the

---

[1] Mr. Soto's memoranda are not paginated; the Court refers to the ECF pagination for pincites.

3

general rule for criminal offenses is that a mens rea requirement applies to each element of the offense. *Id.* (citations omitted).

Mr. Soto argues that the language of § 841(a)-(b) paired with recent caselaw from the United States Supreme Court and the Court of Appeals for the First Circuit "demonstrates that the mens rea requirement must apply to the 'death resulting' element of § 841(b)(1)(C), just as it applies to the mandatory minimum triggering drug quantity element." *Id.* Prior to 2013, Mr. Soto notes that § 841(a)(1)'s scienter requirement was interpreted only to apply to the act of distribution, and not the result of the act. *Id.* at 2-3 (citations omitted). Mr. Soto contends that after 2013, there have been significant changes to how courts interpret statutory language and sentencing enhancements. *Id.* at 3. Mr. Soto claims that in light of *Alleyne v. United States*, 570 U.S. 99 (2013) and *Burrage v. United States*, 134 S. Ct. 881 (2014), the drug quantity that triggers a mandatory minimum sentence and the "death resulting" enhancement are no longer sentencing factors; rather, they are elements of aggravated crimes distinct from § 841(a)(1)'s general offense. *Id.*

While acknowledging that neither *Alleyne* nor *Burrage* addresses whether a mens rea element is required, Mr. Soto says the First Circuit has required a mens rea element for a mandatory minimum drug quantity. *Id.* at 4 (citing *United States v. Pizarro*, 772 F.3d 284, 294 (1st Cir. 2014)). Mr. Soto asserts the same conclusion applies here. *Id.* Mr. Soto highlights the Supreme Court's granting certiorari in *Rehaif v. United* States, 888 F.3d 1138 (11th Cir 2018), *cert. granted*, 139 S. Ct. 914 (No. 17-9560) (Jan. 11, 2019), as evidence that the Supreme Court is vigilant in

4

avoiding convicting individuals who have not "knowingly commit[ed] the entire offense of which they stand accused, and not just a piece of that offense." *Id.*

2. **Government's Memorandum**

The Government contends that § 841(b)(1)(C) "has two principal elements: (i) knowing or intentional distribution of [a controlled substance], § 841(a)(1), and (ii) death caused by ('resulting from') the use of that drug, (b)(1)(C)." *Gov't's Opp'n to Mot. to Dismiss* at 1-2 (citing *Burrage*, 134 S. Ct. at 887). The Government says the *Burrage* Court was "fully aware of its holding in" *Alleyne*, and *Burrage* does not include a knowing or intentional requirement for the "resulting death" element. *Id.* at 2.

The Government argues Mr. Soto's reliance on *Pizarro* is misplaced, as it did not add a new mens rea element to § 841 but "held that juries must find requisite drug quantities for application of mandatory minimum and statutory maximum triggering elements." *Id.* (citing *Pizarro*, 772 F.3d at 294). The Government claims the First Circuit did not extend the mens rea requirement to § 841's second element, and correspondingly, there is also no mens rea requirement for § 841(b)(1)(C)'s "death resulting" element. *Id.* The Government maintains that every court that has considered Mr. Soto's argument has rejected it. *Id.* at 2-3 (citing cases). The Government further argues that Mr. Soto's provides no authority showing § 841(b)(1)(C) is unconstitutional and his assertion "that he will be at risk of conviction without knowingly committing the entire offense of which he stands accused, is unavailing." *Id.* at 3 (citing *Def.'s Mot to Dismiss* at 4) (internal quotation marks

5

omitted). The Government avers that criminal statutes often punish individuals for the unintended consequences of their unlawful actions. *Id.* (citing *Dean v. United States*, 556 U.S. 568, 575 (2009)).

B.  **Motion to Sever**

   1.  **Defendant's Memorandum**

Mr. Soto asserts the difference between Count One and Count Two of the Indictment is Count One contains an allegation that Mr. Soto distributed a mixture containing fentanyl resulting in death or serious bodily injury. *Def.'s Mot. to Sever* at 1. Mr. Soto claims that for the Government to meet its burden on Count One, it "must prove two elements not present in Count II: (1) that an individual suffered death or serious bodily injury, and (2) that fentanyl distributed by the defendant was the but-for cause of the death of injury." *Id.* at 1-2 (citation omitted).

Mr. Soto claims the alleged victim, Edward Rogers, was "a forty-eight year old drug addict who was morbidly obese and suffered hypertension[,]" who was also recently released from prison. *Id.* at 2. Mr. Soto says the Government intends to present a witness, Adam Berry, who was with Mr. Rogers when he injected himself with drugs on March 14, and who later told Government agents that they had been smoking marijuana all day and that Mr. Rogers injected a quarter gram of heroin mixed with fentanyl that evening. *Id.* Mr. Berry will describe the drug substance as "white powder that was melted in foil" and he will say that he had used it himself, and watched Mr. Rogers slump over and stop breathing. *Id.* Mr. Soto argues Mr. Berry stated he did not know where Mr. Rogers had gotten the heroin. *Id.* Mr. Soto

6

notes that Mr. Berry cleaned and discarded some of the used drug instruments, and "was arrested and charged with falsifying criminal evidence." *Id.* at 2 n.1. Mr. Soto says the autopsy report "lists the cause of death as acute fentanyl intoxication." *Id.* at 3.

Mr. Soto contends the Court should sever the Counts under Rule 14(a) of the Federal Rules of Criminal Procedure to avoid unfair "spillover" prejudice. *Id.* Mr. Soto says even when joinder is proper under Rule 8(a), under Rule 14(a), the Court may sever the Counts and order separate trials where it "appears to prejudice a defendant or the government." *Id.* (quoting *United States v. Boulanger*, 444 F.3d 76, 87 (1st Cir. 2006) (quoting FED. R. CRIM. P. 14(a)). Mr. Soto contends this case presents prejudice because "proof the defendant is guilty of one offense may be used to convict him of another offense, even though such evidence would be inadmissible in a separate trial for the other offense." *Id.* (citing *United States v. Kinsella*, 530 F. Supp. 2d 356, 360 (D. Me. 2008) (citing *United States v. Scivola*, 766 F.2d 37, 41-42 (1st Cir. 1985))).

Mr. Soto argues "[t]he evidence about Mr. Rogers' use of the drug and his death on March 14, 2017 (Count I) will be far more compelling and emotionally charged than the relatively mundane evidence regarding the alleged distribution of fentanyl by Mr. Soto (Count II)." *Id.* at 3-4. Mr. Soto acknowledges that much of the evidence admissible for Count Two is also admissible for Count I; he says "the additional evidence required for Count I as to Mr. Rogers' fentanyl use and death would not be admissible as to Count II []" as it is highly prejudicial and has no probative value to

7

Count Two. *Id.* at 4 (citing FED. R. EVID. 403). Mr. Soto asserts the "resulting death" element "requires evidence sufficient to support a causal nexus between the controlled substance allegedly distributed by Mr. Soto and the death of Mr. Rogers[,]" which may require the use of various witnesses' testimony not relevant to Count II. *Id.* Mr. Soto concludes:

> [T]he narrative of Rogers' drug use and death will appeal to jurors' emotions and will magnify the justifiable, pervasive upset about the op[i]oid epidemic, made orders of magnitude worse by the inclusion of fentanyl, such that it will be difficult for jurors to focus on whether the government has met its burden to prove on Count II (distribution of fentanyl on March 14) or not.

*Id.* at 5.

### 2. Government's Memorandum

The Government claims that Rule 8(a) of the Federal Rules of Criminal Procedure is "generously construed in favor of joinder." *Gov't's Opp'n to Mot. to Sever* at 1-2 (quoting *Boulanger*, 444 F.3d at 87) (internal quotation marks omitted). The Government asserts that "[t]he test for assessing the similarity of joined counts is 'how the government saw its case at the time of the indictment.'" *Id.* at 2 (quoting *United States v. Matthews*, 856 F. Supp. 2d 229, 232 (D. Me. 2012) (quoting *United States v. Melendez*, 301 F.3d 27, 35 (1st Cir. 2002))). The Government says Counts One and Two both involve "the distribution of fentanyl. The conduct is identical. The only meaningful distinction is on one day the recipient of the fentanyl died . . . . These charges are clearly part of the same common scheme or plan." *Id.*

The Government avers that Mr. Soto failed to show it is necessary to sever Counts One and Two. *Id.* The Government argues that Mr. Soto needs to make "a

8

strong showing of prejudice []" to prevail. *Id.* (citations omitted). The Government says there are three types of prejudice:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*Id.* at 3 (quoting *United States v. Jordan*, 112 F.3d 14, 16 (1st Cir. 1997)). The Government believes that Mr. Soto's argument does not satisfy any of the *Jordan* requirements. *Id.* The Government argues Mr. Soto's argument "that the additional evidence required to meet the death resulting element on Count One creates prejudice as to Count Two []" is "purely speculative and easily cured by a jury instruction." *Id.* The Government dismisses Mr. Soto's argument that because some evidence is only relevant for Count One, severance is necessary. If this were the rule, the Government claims, "multiple counts would rarely be tried together." *Id.* The Government concludes that Mr. Soto has not revealed any uniqueness to his case which requires Count One and Two to be severed and that "[t]o the extent there is any such prejudice, this is the type of garden variety prejudice that will not justify a severance [and] [p]roper jury instructions will minimize any prejudicial spillover." *Id.* at 3-4.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

"[D]ismissing an indictment is an extraordinary step." *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir.

9

1997)). The Court is mindful that it "should exercise its authority to dismiss cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental role of the grand jury.'" *United States v. Thomas*, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)). Accordingly, unlike a complaint initiating a civil action, "an indictment is not generally subject to dispositive motion practice." *United States v. Ayotte*, 841 F. Supp. 2d 398, 403 (D. Me. 2012) (quoting *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009)). Dismissal of an indictment by a federal court "is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse*, 53 F.3d at 1360 (1st Cir. 1995) (citing *Bank of N.S. v. United States*, 487 U.S. 250, 263 (1988)).

### B. Motion to Sever

Rule 8(a) provides:

> The indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

FED. R. CRIM. P. 8(a). In *United States v. Randazzo*, the First Circuit wrote that "Rule 8(a)'s joinder provision is generously construed in favor of joinder." 80 F.3d 623, 627 (1st Cir. 1996). To determine whether counts are properly joined, the First Circuit directs courts to consider "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes or operation, and the time

frame in which the charged conduct occurred." *Boulanger*, 444 F.3d at 87 (quoting *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)).

Rule 14 provides:

> If the joinder of offenses . . . in an indictment . . . or consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a). Whether the joinder is prejudicial under Rule 14 falls "within the sound discretion of the district court." *Scivola*, 766 F.2d at 41.

## IV. DISCUSSION

### A. Motion to Dismiss

Mr. Soto acknowledges that neither *Alleyne* nor *Burrage* concerns whether § 841(b)(1)(C) requires a mens rea element but argues the First Circuit's holding in *Pizarro* dictates that a mens rea element must "apply to the 'death resulting' language" of § 841(b)(1)(C). *Def.'s Mot. to Dismiss* at 4. He also argues the language of § 841 demonstrates that a mens rea requirement must be applied on § 841(b)(1)(C)'s "death resulting" element. The Court disagrees.

Section 841(a)(1) provides:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

Section 841(b)(1)(C) provides in relevant part:

> In the case of a controlled substance in schedule I or II . . . except as provided in subparagraphs (A), (B), and (D) . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment

11

of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment [.]

Subsection (a) of § 841 is entitled "unlawful acts" and subsection (b) is entitled "penalties." § 841(a)-(b). Accordingly, the Pattern Criminal Jury Instructions for the District Courts of the First Circuit provide that to find a defendant guilty under § 841(a)(1) for distribution of a controlled substance, the government must prove the following beyond a reasonable doubt:

> First, that on the date alleged [defendant] transferred [controlled substance] to another person;
>
> Second, that [he/she] knew that the substance was [controlled substance]; and
>
> Third, that [defendant] acted intentionally, that is, that it was [his/her] conscious object to transfer the controlled substance to another person.
>
> . . . . .
>
> If you find [defendant] guilty, you will also have to answer one or more questions under the standard of proof beyond a reasonable doubt concerning the quantity of the substance involved, which may affect the potential sentence.

*Pattern Criminal Jury Instructions For The District Courts Of The First Circuit* 4.21.841(a)(1)B (brackets in original). The *Pizarro* Court's reasoning does not alter the validity of these instructions.

In *Pizzaro*, the First Circuit held:

> [T]he district court erred by failing to instruct the jury on the essential element of individualized drug quantity for the aggravated conspiracy count and the essential element of drug quantity for the aggravated possession count before applying a statutory sentencing range that included a mandatory minimum sentence on each count.

772 F.3d at 287.[2] It recognized "[u]nder *Apprendi* and now *Alleyne*, each of the subsections of 21 U.S.C. § 841(b)(1), with its associated drug quantities and sentencing ranges, is a separate crime." *Id.* at 292. The First Circuit explained that in *Burrage* "because an aggravating element in § 841(b)(1)—that death results from the use of the distributed drug—'increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.'" *Id.* (quoting *Burrage*, 134 S. Ct. at 887 (citing *Alleyne*, 133 S. Ct. at 2162–63; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000))). Thus, "*Burrage* concluded that a violation of § 841(a)(1), without a finding on the 'death results' aggravating element, is a lesser-included offense of the aggravated offense that includes the 'death results' element under § 841(b)(1)." *Id.* (citing *Burrage*, 134 S. Ct. at 887 n.3). Accordingly, because the "death resulting" element "makes the distribution of drugs where death results a separate crime from the distribution of drugs without a death resulting, drug quantity in § 841(b)(1) creates aggravated conspiracy and possession offenses." *Id.*

Mr. Soto is correct that since the First Circuit's decision in *United States v. De La Cruz*, 514 F.3d 121 (1st Cir. 2008), there have been significant developments in the law in the relationship among offenses' elements, sentencing factors, and what must be established as to each respectively, but these developments do not equate to

---

[2] The First Circuit affirmed the convictions. It determined the errors harmless because it found "beyond a reasonable doubt that the omitted elements were uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the errors." 772 F.3d at 287 (citation and brackets omitted). It vacated Pizzaro's sentence "because the district court overlooked our prior remand order by refusing to engage in credibility assessments with respect to the conspiracy drug quantity the court attributed to Pizarro and by refusing to consider Pizarro's arguments regarding the firearm enhancement." *Id.*

13

extending an mens rea element to § 841(b)(1)(C)'s "death resulting" provision. Indeed, in *Burrage*, the Supreme Court stated the elements for "the crime charged in count 2 [§ 841(b)(1)(C)] of Burrage's superseding indictment [are] (i) knowing or intentional distribution of heroin, § 841(a)(1) and (ii) death caused by ('resulting from') the use of that drug, § 841(b)(1)(C)." 571 U.S. at 210. *Burrage* concerned the level of causation the Government must establish under § 841(b)(1)(C)'s "death resulting" provision and it clarified that "a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 218-19. In *Pizarro*, the First Circuit concluded "under *Alleyne* and *Apprendi*, the jury must find the mandatory-minimum and statutory-maximum triggering elements." 772 F.3d at 293.

Neither case holds that the "death resulting" provision in § 841(b)(1)(C) must include a mens rea requirement. As pointed out by the Government, other courts have rejected this argument. *See Gov't's Opp'n to Mot. to Dismiss* at 2-3 (collecting cases); *see also United States v. Ewing*, 749 Fed. App'x 317, 320-21 (6th Cir. 2018) (mens rea requirement applies only to "an intent to distribute a controlled substance" in § 841(a)); *United States v. Harden*, 893 F.3d 434, 444, 454 (7th Cir. 2018) (affirming judgment and rejecting defendants' arguments "that the 'death results' enhancement in § 841(b) also requires proof of proximate causation" where the jury instructions provided, "[t]he United States does not have the burden of establishing that the defendant intended that death resulted from the distribution or the use of the controlled substance. Nor does the United States have the burden of establishing

that the defendant knew, or should have known, that death would result from the distribution of the controlled substance by the defendant"); *United States v. Massena*, 719 Fed. App'x 884, 887 (11th Cir. 2017) (rejecting defendant's argument that *Alleyne* or *Burrage* imposes a mens rea requirement on § 841(b)); *United States v. Anderson*, No. 3:17-cr-00132-2, 2018 WL 2306985, at *2 (M.D. Tenn. May 21, 2018).

Mr. Soto cites *Rehaif*, 139 S. Ct. 914, as evidence of "the Supreme Court's continuing vigilance in ensuring that individuals accused of criminal offenses will not be at risk of conviction without knowingly committing the entire offense of which they stand accused, and not just a piece of that offense." *Def.'s Mot. to Dismiss* at 4. Apart from reading a great deal into the mere granting of a petition for writ of certiorari, the question presented in *Rehaif* is "[w]hether the "knowingly" provision of § 924(a)(2) applies to both the possession and status elements of a § 922(g) crime, as has been urged by then-Judge, now Justice Gorsuch, or whether it applies only to the possession element, as has been held by the courts." Petition for Writ of Certiorari, *Rehaif*, 139 S. Ct. 914 (No. 17-9590). Putting aside that *Rehaif* concerns a different statute, it does not affect the conclusion that § 841(b)(1)(C)'s lack of a mens rea requirement does not render it unconstitutional under the current state of the law.

Indeed, Mr. Soto provides no authority finding that § 841(b)(1)(C) is unconstitutional and the Court is aware of none. The Government is correct that to the degree Mr. Soto is arguing § 841(b)(1)(C) is unconstitutional because he stands at risk of being convicted of an offense without intending to commit the entire charged offense is neither unusual nor unlawful. *Dean*, 556 U.S. at 575; *Lassend v. United*

15

*States*, 898 F.3d 115, 132 n.16 (1st Cir. 2018) (collecting cases) ("In line with *Dean*, many circuits have explained that it is typical to hold defendants accountable for the unintended consequences of intentional criminal acts").

While courts generally "interpret criminal statutes to require that a defendant possess a mens rea, or guilty mind, as to every element of an offense[,]" *Torres*, 136 S. Ct. at 1630 (citation omitted), the First Circuit considered the text of § 841(b) and rejected such an interpretation for § 841(b). *United States v. Nelson-Rodriguez*, 319 F.3d 12, 44 (1st Cir. 2003); *United States v. Collazo-Aponte*, 281 F.3d 320, 326 (1st Cir. 2002); *see also United States v. King*, 345 F.3d 149, 152-53 (2d Cir. 2003). In *Collazo-Aponte*, the Defendant argued § 841(b) was "unconstitutional because it does not require proof beyond a reasonable doubt that the defendant knew of the specific quantity of cocaine involved in the offense." *Collazo-Aponte*, 281 F.3d at 325. The Defendant asserted "that since, post-*Apprendi*, § 841(b) must be determined by a jury beyond reasonable doubt, the drug quantity at issue is now an element of the offense to which the mens rea requirement should apply." *Id.* at 326. The First Circuit rejected this argument and found "nothing in the statutory language of § 841(b) supports a mens rea requirement." *Id.* It further concluded the presumption in favor of a scienter requirement was not applicable since "the drug quantity involved in appellant's offense is not a factor that is necessary to the determination of whether his conduct is 'criminal' or 'innocent.'" *Id.* This reasoning comports with *Pizarro*'s outline of the elements for a possession conviction under § 841(b)(1)(A). 772 F.3d at 294; *see also United States v. Young*, No. 2:13-cr-193-GZS, 2014 WL 12673011, at *16

& n.12 (D. Me. Sept. 1, 2014), *reversed on other grounds*, 835 F.3d 13 (1st Cir. 2016) (concluding *Alleyne* does not undermine *Collazo-Aponte's* validity).

Accordingly, neither its statutory language nor related caselaw establishes that § 841(b)(1)(C)'s "death resulting" provision requires a mens rea element. The Court denies Cameron Soto's Motion to Dismiss Count I (ECF No. 98).

**B.    Motion to Sever**

Mr. Soto contends he will experience prejudice from the joining of Counts One and Two because "proof [that he] is guilty of one offense may be used to convict him of another offense, even though such evidence would be inadmissible in a separate trial for the other offense." *Def.'s Mot. to Sever* at 3 (citing *Kinsella*, 530 F. Supp. 2d at 360 (citing *Scivola*, 766 F.2d at 41-42)). Mr. Soto believes "all of the evidence admissible on Count II – records of telephone, text communications, testimony of cooperating witnesses and agents about controlled buys . . . are admissible on Count I, [but] the additional evidence required for Count I as to Mr. Rogers' fentanyl use and death would not be admissible" for Count Two because it would be highly prejudicial and have little probative value. *Id.* at 4. The Government counters that Counts One and Two are properly joined, Mr. Soto has not shown that severance is necessary under *Jordan*, and his argument concerning potential prejudice is speculative and can be cured through jury instructions. *Gov't's Opp'n to Mot. to Sever* at 1-3.

A defendant may be charged on an indictment or information with multiple counts if they "are of the same or similar character, or are based on the same act or

transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). The Court considers factors such as "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *Taylor*, 54 F.3d at 973 (citation omitted). Mr. Soto does not argue that Counts One and Two are improperly joined, and it is apparent, in reviewing the indictment, the Counts are properly joined as they fall under the same statute, occurred over successive days, and assert parallel conduct. The only significant difference is that Count One includes an allegation of the "death resulting" enhanced penalty under § 841(b)(1)(C) and Count Two does not. Mr. Soto says this difference warrants the Counts to be severed because trying the two Counts together will cause him prejudice. The Court disagrees.

"Garden variety prejudice . . . will not, in and of itself, warrant severance[,]" *United States v. Azor*, 881 F.3d 1, 12 (1st Cir. 2017) (citation omitted), rather the defendant must show that the joining of the Counts will "likely deprive[] him of a fair trial." *United States v. Burgos*, 254 F.3d 8, 14 (1st Cir. 2001). The First Circuit identified three types of prejudice from joining different offenses that may warrant severance:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissable in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008) (quoting *Jordan*, 112 F.3d at 17). Mr. Soto's argument falls under the second type of prejudice, which is based on a theory of evidentiary spillover.[3] Mr. Soto posits that the testimony of witnesses the Government may call to establish Mr. Roger's death and its causal nexus to the controlled substance allegedly distributed by Mr. Soto are not relevant to Count Two and "will appeal to jurors' emotions and will magnify the justifiable, pervasive upset about the op[i]oid epidemic." *Def.'s Mot. to Sever* at 4-5.

The First Circuit "has repeatedly refused to overrule a denial of severance if substantially the same evidence would have been admitted in separate trials." *Richardson*, 515 F.3d at 82 (citing *Burgos*, 254 F.3d at 14; *United States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993); *United States v. Stackpole,* 811 F.2d 689, 693–94 (1st Cir. 1987); *United States v. O'Connell*, 703 F.2d 645, 649 (1st Cir. 1983) (alterations in ordering)). Mr. Soto admits that "all of the evidence admissible on Count II – records of telephone, text communications, testimony of cooperating witnesses and agents about controlled buys, etc., are admissible on Count I[.]" *Def.'s Mot. to Sever* at 4. Setting aside whether the Government's additional evidence to establish Mr. Roger's death and its causal nexus are admissible under Rule 404(b) or alternatively inadmissible under Rule 403, any potential spillover prejudice generally can be adequately limited with "preliminary and closing [jury] charges, to consider the

---

[3] In support of his argument, Mr. Soto cites *Kinsella*, an opinion this Court issued in 2008 on a motion to sever. *Def.'s Mot. to Sever* at 3 (citing *Kinsella*, 530 F. Supp. 2d at 360). *Kinsella* is a very different case. Mr. Kinsella represented to the Court that he might wish to testify in the trial of one count but to remain silent in the trial of another count. Thus, the *Kinsella* motion to sever implicated the third *Jordan* requirement, namely "a desire to testify as to one offense, but not to others." *Kinsella*, 530 F. Supp. 2d at 364-65. Mr. Soto has made no such assertion here.

evidence separately as to each count of the indictment, and to determine guilt on an individual basis." *United States v. Baltas*, 236 F.3d 27, 34 (1st Cir. 2001); *see also United States v. Liberatore*, No. 16-cr-10211-ADB, 2017 WL 2294283, *3 (D. Mass. May 25, 2017).

The Court finds the potential spillover prejudice Mr. Soto identifies is not likely to be so significant that it cannot be remedied through proper jury instructions.[4] *See United States v. Mangual-Santiago*, 562 F.3d 411, 426 (1st Cir. 2009) (quoting *United States v. Bucci*, 525 F.3d 116, 127 (1st Cir. 2008) (Courts "ordinarily presume that jurors will follow limiting instructions")). Therefore, because substantially the same evidence would be admitted at both trials and because proper jury instructions will cure any possible prejudice, the Court concludes severance is not necessary.

The Court denies Cameron Soto's Motion to Sever Count I (ECF No. 97).

## V. CONCLUSION

The Court DENIES Cameron Soto's Motion to Dismiss Count I (ECF No. 98) and his Motion to Sever Count I (ECF No. 97).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of April, 2019.

---

[4] In his motion, Mr. Soto sets forth his perspective of some of the Government's evidence on Count One. *Def.'s Mot. to Sever* at 2-3. If he is correct and the Government's case on Count One is weak, the spillover impact might benefit his defense of Count Two.

20