UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,            CRIMINAL ACTION

                    Plaintiff         Docket No: 2:17-cr-157-JAW


          -versus-


CAMERON SOTO,

               Defendant
_____

                 Transcript of Proceedings

Pursuant to notice, the above-entitled matter came on for **Arraignment and Change of Plea Hearing** held before **THE HONORABLE JOHN A. WOODCOCK, JR.,** United States District Court Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine, on the 13th day of June, 2019, at 1:00 p.m. as follows:



Appearances:

For the Government:  David B. Joyce, Esquire
                     Jonathan Nathans, Esquire
                     Assistant United States Attorneys

For the Defendant:  Kevin J. Reddington, Esquire
                    Paul Aranson, Esquire




                 Dennis R. Ford
              Official Court Reporter

             (Prepared from manual stenography
              and computer aided transcription)

```
 1                    (Chambers conference)
 2            THE COURT:  Good afternoon.  Please be seated.
 3   Okay, we are here in the matter of United States versus Cameron
 4   Soto, which is 17-cr-157-JAW.  Would counsel please enter their
 5   appearances.
 6            MR. JOYCE:  David Joyce and Jonathan Nathans for
 7   the United States.
 8            MR. ARANSON:  Paul Aranson for the defendant.
 9            MR. REDDINGTON:  And Kevin Reddington for the
10   defendant.
11            THE COURT:  So, I have -- I appreciate all of the
12   work you've done.  I have some questions for you before we go
13   in.
14            I looked at the plea agreement and I didn't see
15   any mention of what was going to happen to the originally filed
16   indictment.  It's pretty clear under 1st Circuit law that --
17   I'll cite the case of United States versus Vavlitis, which is
18   V-a-v-l-i-t-i-s, which is 9 F.3d 206 (1993) which says, quote,
19   it is clear that the grand jury's return of a superseding
20   indictment does not void the original indictment.
21            So, the original indictment is still pending and
22   needs to be resolved.  I didn't see any mention of it.  I
23   assume that the Government, although it's not in the plea
24   agreement, is going to dismiss the original indictment at some
25   point?
```

1          MR. JOYCE:  That's the intent, Your Honor, yes.  I

2   would be happy to do it as soon as orally today if the Court

3   accepts the guilty plea.

4          THE COURT:  All right.  We need to make sure

5   that's done so we don't have two -- we don't have a floating

6   indictment out there that we haven't taken care of.

7          Second question I had is this is scheduled for

8   arraignment on the superseding indictment.  He has not been

9   arraigned on the superseding indictment and then the Rule 11.

10   Typically in an arraignment we go forward with all of the

11   requirements of the arraignment, including his right to a

12   preliminary hearing, his right to counsel, his right to bail.

13   I take it that none of that, because he's pleading guilty, is

14   something I should explore.

15          MR. REDDINGTON:  Correct.

16          THE COURT:  So, instead of the usual I understand

17   you wish to change your plea, I'll just simply say I understand

18   you wish to plead guilty so that we'll go right straight to the

19   Rule 11 and, in effect, the Rule 11 and the indictment will be

20   one; okay?

21          MR. JOYCE:  The only difference, Your Honor, he's

22   only pleading guilty to Counts 1 and 2, which is --

23          MR. REDDINGTON:  1 and 2.

24          THE COURT:  Yeah, I've got some questions about

25   that too.  Prior conviction, the Government's filed a prior

1    conviction; is the defendant prepared to admit at this hearing

2    to the prior conviction?

3              MR. REDDINGTON:  Yes.

4              THE COURT:  Okay.  I want it to be clear about the

5    language in the plea agreement, which discusses in Paragraph 3,

6    it says, agreement regarding defendant's conduct.  The

7    defendant admits that his conduct giving rise to the offense of

8    conviction on Count 2 of the superseding indictment was the but

9    for cause of the overdose death of A.R.  So, later in the

10   non-binding recommendations is the reference to the base

11   offense level of 43 under 2B1.1(a)(1).

12             2B1.1(a)(1) states, if the defendant is convicted,

13   et cetera, and the offense of conviction establishes that the

14   death resulted from the use of a substance and the defendant

15   committed the offense after one or more prior convictions.  So,

16   the language is slightly different.  We're talking here in the

17   base offense level of 43 resulted from.  The language that you

18   have proposed that he admit is but for.

19             Do we know that -- is there an agreement that but

20   for is the same as resulted from or is there going to be a

21   disagreement on that?

22             MR. JOYCE:  Resulted from is the statutory

23   language.

24             THE COURT:  This is the guideline language.

25             MR. JOYCE:  And I think that's being brought over

1     into the guideline language in the Supreme Court's decision,

2     which said but for is the burden of proof in order to get there

3     to the resulted from in Burrage, which is why we had referenced

4     it that way.

5              THE COURT:  Sure.

6              MR. JOYCE:  I don't think there's a difference

7     that needs to be resolved now.

8              THE COURT:  Okay.  Well, I'm just trying to be as

9     clear as it is.  This man is facing a lot of time and this is

10     an important agreement and I just want to make sure we're all

11     on the same page if we are.

12              So, if I talk to him about the but for and say

13     that it's a consequence of your agreeing to the but for, you

14     are in effect agreeing that your base offense level will be 43

15     under the guidelines; is that correct or is that going to be an

16     issue?

17              MR. REDDINGTON:  It won't be an issue.

18              THE COURT:  So, is that -- I just want him to know

19     what the significance in court at the Rule 11 so that his plea

20     is knowing.

21              MR. REDDINGTON:  Yes.

22              THE COURT:  That when he agrees to but for, he's

23     effectively agreeing to a base offense level 43 under the

24     guidelines.

25              MR. REDDINGTON:  Yes.  I've gone over that with

```
 1   him.
 2                   THE COURT:  You did?
 3                   MR. REDDINGTON:  Um-hmm.
 4                   THE COURT:  Okay.  The fourth thing is there is a
 5   provision in the agreement that the defendant agrees to waive
 6   any claim to the Smith & Wesson.
 7                   The prosecution version, which sets forth the
 8   facts underlying Count 2, which is the count that triggers the
 9   forfeiture of the firearm, doesn't mention the firearm; do we
10   all know that?
11                   MR. JOYCE:  Yes.
12                   THE COURT:  I assume that it's not absolutely
13   necessary -- he can agree to forfeit anything --
14                   MR. REDDINGTON:  Right.
15                   THE COURT:  -- but it's in reference to Count 2
16   and I looked at Count 2 and Count 2 doesn't talk about a
17   firearm; is everyone happy with that?
18                   MR. REDDINGTON:  We're happy with that.  He's
19   waiving any claims, as you say, anything that the Government
20   puts in the forfeiture without referencing the Smith & Wesson
21   specifically.
22                   THE COURT:  Yeah.  The agreement says he's going
23   to forfeit the Smith & Wesson.
24                   MR. REDDINGTON:  Right.
25                   THE COURT:  And --
```

```
 1              MR. REDDINGTON:  We have no claim to it.

 2              MR. JOYCE:  Judge, I believe the firearm has all

 3    ready been forfeited in the Trevor Teves case, and so we're

 4    simply -- that being --

 5              MR. REDDINGTON:  Gregory Teves.

 6              MR. JOYCE:  -- so he wouldn't put in a claim, so

 7    that's what the Court has all ready ordered.

 8              THE COURT:  So, the reason I asked -- where it

 9    says in the forfeiture allegation of the superseding indictment

10    is that upon the conviction of the offense alleged in Count 2

11    of the superseding indictment, he shall forfeit the Smith &

12    Wesson.  And then I look at Count --

13              MR. JOYCE:  It should say Count 3.  I think that's

14    an error.

15              MR. REDDINGTON:  3.

16              THE COURT:  And we're dismissing Count 3, but he's

17    agreeing to the forfeiture, period.

18              MR. JOYCE:  I don't think there's a need for a

19    preliminary order because the Court's all ready ordered that

20    property forfeited, so he has been -- in the event he wasn't

21    properly notified or --

22              THE COURT:  Right.  He's forfeiting whatever right

23    he might have in this.

24              MR. REDDINGTON:  We waive any claims to that

25    property.
```

1          THE COURT:  Okay.  How do you want to handle it?

2          MR. JOYCE:  I think the Court can just review the

3   provision in the plea agreement.  Again, I don't think there's

4   anything else that needs to be done.

5          THE COURT:  Okay.  The other forfeiture issue is

6   the prosecution version mentions the seizure of $1,715.  It's

7   not mentioned in the plea agreement.

8          MR. NATHANS:  Yeah.  I think the expectation is

9   that there will be some sort of forfeiture on the state side.

10          THE COURT:  Not sure you want me to -- do you want

11   me to do anything with that?

12          MR. NATHANS:  I don't think you need to do

13   anything with that, Your Honor.

14          THE COURT:  Okay.  I didn't see any reference in

15   any of the paperwork to restitution to the victim.  Is there a

16   restitution claim here?  Is there possible restitution?

17          MR. JOYCE:  There's possible restitution.

18          THE COURT:  Should I mention that to him?

19          MR. JOYCE:  Please.  In a related case, we had a

20   victim request restitution for funeral expenses.  We haven't

21   litigated the viability of that claim, but it's probably worth

22   advising him of that.

23          THE COURT:  And when I reference that, it would be

24   by initial to E.R.?  Are there any other potential victims?

25          MR. JOYCE:  E.R.'s family.

```
1              THE COURT:  E.R. and E.R.'s family?
2              MR. REDDINGTON:  Your Honor, the only concern on
3    the top of my head --
4              THE COURT:  Sure.
5              MR. REDDINGTON:  -- the only concern I have on the
6    restitution order, whatever it may be if there even is one, is
7    that my understanding, and I may be wrong, is that
8    hypothetically if there was a restitution, say, of $6,000 or
9    $7,000 and it's noted on the judgment and commitment, there's
10   certain records -- records of the plea colloquy, it would jam
11   up any funds that he would have by the Bureau of Prisons.
12   That's the only concern I have.
13             Now, you know, he has family that are very
14   supportive of him.  They don't have a lot of money and I just
15   don't know as they would be in a position to make an immediate
16   payment on restitution.  I know the Bureau of Prisons will
17   basically take all his money and leave him, you know, very
18   little to live on.
19             THE COURT:  I think restitution is mandatory for a
20   victim of a crime under the -- for purposes of -- it's limited
21   in terms of definition what they can assert --
22             MR. REDDINGTON:  Right.
23             THE COURT:  -- but I think it's mandatory.  I
24   think for purposes of today's hearing, I should let him know so
25   that it doesn't come as a shock to him --
```

1          MR. REDDINGTON:  Right.

2          THE COURT:  -- that there may be an order of

3    restitution.  It sounds like someone else -- he may be jointly

4    and severally responsible.

5          MR. JOYCE:  I don't believe we received a

6    restitution request in connection with this matter yet.

7    Certainly when we send out the victim impact statement

8    following a guilty plea, that may come.  I think for today's

9    purposes, it's proper to advise him and whether there's an

10   order that ultimately follows and, if so, for how much is a

11   sentencing matter.

12         THE COURT:  Sure.  And once you send out the

13   victim impact statements, one thing that you're -- also under

14   the statute you have to notify him of a -- the victim and the

15   victim's family of a sentencing hearing and then they show up.

16         MR. JOYCE:  Of course, yes.  They've been notified

17   of today's hearing.  I don't believe anybody's here.

18         THE COURT:  All right.  So, I'll let him know

19   that.  You might tell him that --

20         MR. REDDINGTON:  Yes.

21         THE COURT:  -- that's one of the things that might

22   be coming.  Otherwise I think I've covered everything.

23   Anything else?

24         MR. JOYCE:  Ready to go.  Thank you.

25         THE COURT:  Anything else?

```
 1                    MR. REDDINGTON:  Thank you.

 2                    (Open court.  Defendant present.)

 3                    THE COURT:  All right.  We are here in the matter

 4     of United States versus Cameron Soto, which is 17-cr-157-JAW.

 5     Would counsel please enter their appearances.

 6                    MR. JOYCE:  Good afternoon, Your Honor.  David

 7     Joyce and Jonathan Nathans for the United States.

 8                    THE COURT:  Good afternoon.

 9                    MR. REDDINGTON:  Good afternoon, Your Honor.

10     Kevin Reddington for Mr. Soto.  With me is Attorney Aranson,

11     who is local counsel.

12                    THE COURT:  Good afternoon, Mr. Soto.  Would you

13     stand.

14                    THE DEFENDANT:  Yes, Your Honor.

15                    THE COURT:  What is your name?

16                    THE DEFENDANT:  Cameron Soto.

17                    THE COURT:  Mr. Soto, the purpose of the hearing

18     this afternoon is for me to make sure you understand what

19     you're doing.

20                    THE DEFENDANT:  Yes, Your Honor.

21                    THE COURT:  And also to make sure that you're

22     doing what you're doing of your own free will.  In other words,

23     what you do this afternoon must be knowing and voluntary; do

24     you understand?

25                    THE DEFENDANT:  I do, Your Honor.
```

1              THE COURT:  I'm going to start, Mr. Soto, by

2    asking you some questions because I want to be sure you're

3    competent.  How old are you, Mr. Soto?

4              THE DEFENDANT:  26 years old.

5              THE COURT:  How far did you go in school?

6              THE DEFENDANT:  GED, Your Honor.

7              THE COURT:  Have you recently been seeing any

8    doctor or psychiatrist?

9              THE DEFENDANT:  Um, no, Your Honor.

10             THE COURT:  Are you currently taking any medicine?

11             THE DEFENDANT:  Yes, I am, Your Honor.

12             THE COURT:  What are you taking?

13             THE DEFENDANT:  I'm taking Remeron, which I

14   believe is a generic name.  I don't know what the actual name

15   is.

16             THE COURT:  What's it for?

17             THE DEFENDANT:  Sleeping.

18             THE COURT:  How long have you been taking it?

19             THE DEFENDANT:  For about a year and a half.

20             THE COURT:  When do you take it?

21             THE DEFENDANT:  At nighttime.

22             THE COURT:  Did you take it last night?

23             THE DEFENDANT:  Yes, I did, Your Honor.

24             THE COURT:  Are you taking any other medicine?

25             THE DEFENDANT:  No, I'm not, Your Honor.

1          THE COURT:  Have you failed to take any medicine a

2   doctor has told you you should take?

3          THE DEFENDANT:  No, I haven't, Your Honor.

4          THE COURT:  Do you believe that the Remerol (sic)

5   has any impact on your ability to understand these proceedings?

6          THE DEFENDANT:  No, I do not.

7          THE COURT:  Other than the Remerol (sic) you've

8   told me about, have you used any other alcohol or drugs in the

9   last 24 hours.

10          THE DEFENDANT:  No, I have not, Your Honor.

11          THE COURT:  Do you believe you understand what's

12   happening in these proceedings?

13          THE DEFENDANT:  Yes, I do, Your Honor.

14          THE COURT:  Mr. Reddington, have you had an

15   opportunity to speak with your client this afternoon?

16          MR. REDDINGTON:  Yes, I have, Your Honor.

17          THE COURT:  Do you have any concerns about his

18   competence?

19          MR. REDDINGTON:  Not at all.

20          THE COURT:  Thank you.  Based on your lawyer's

21   responses, your responses and my direct observations, Mr. Soto,

22   I do find that you are competent.

23          Has Mr. Reddington explained to you the

24   consequences that may flow from these proceedings?

25          THE DEFENDANT:  Yes, he has, Your Honor.

```
 1                THE COURT:  Do you authorize Mr. Reddington to

 2    speak on your behalf in court today?

 3                THE DEFENDANT:  Yes, I do, Your Honor.

 4                THE COURT:  Have you been satisfied with the

 5    services of your attorney?

 6                THE DEFENDANT:  Yes, I have, Your Honor.

 7                THE COURT:  Now, there has been a superseding

 8    indictment that has been filed in this case; are you aware of

 9    that?

10                THE DEFENDANT:  Yes, I am, Your Honor.

11                THE COURT:  And I've been told by the lawyers, as

12    reflected in the plea agreement here, that you wish to plead

13    guilty to Counts 1 and 2 of that superseding indictment; is

14    that right?

15                THE DEFENDANT:  Yes, Your Honor.

16                THE COURT:  And that you also wish to consent to

17    the forfeiture that is alleged in the indictment; is that

18    correct?

19                THE DEFENDANT:  I do, Your Honor.

20                THE COURT:  The clerk may proceed.

21                THE CLERK:  Cameron Soto, you are charged in a

22    three count superseding indictment bearing criminal

23    No. 17-157-JAW.  How do you now plead to the charges contained

24    in Counts 1 and 2 of the superseding indictment; guilty or not

25    guilty?
```

1              THE DEFENDANT:  Guilty.

2              THE CLERK:  And do you consent to the forfeiture

3    as contained in the indictment?

4              THE DEFENDANT:  Yes, I do.

5              THE CLERK:  The defendant pleads guilty to

6    Counts 1 and 2 and consents to the forfeiture contained in the

7    superseding indictment, Your Honor.

8              THE COURT:  Thank you.  Mr. Reddington, do you

9    approve of the change of plea and consent to the forfeiture and

10   recommend that I accept them?

11             MR. REDDINGTON:  Yes, Your Honor.

12             THE COURT:  Now, Mr. Soto, I have a very important

13   question for you and obviously in this courtroom I require a

14   truthful and honest answer.  Have you pleaded guilty to the

15   charges contained in Counts 1 and 2 of the superseding

16   indictment because you are actually guilty of those crimes and

17   for no other reason?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And you've consented to the forfeiture

20   because of the Smith & Wesson involved in the forfeiture as

21   related to the criminal activity?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Mr. Reddington, are you satisfied that

24   your client has pleaded guilty because he is actually guilty?

25             MR. REDDINGTON:  Yes, I am, Your Honor.

 1                 THE COURT:  And are you also satisfied he's

 2     consented to the forfeiture appropriately?

 3                 MR. REDDINGTON:  Yes, Your Honor.

 4                 THE COURT:  Mr. Soto, have you received a copy of

 5     the superseding indictment in this case?

 6                 THE DEFENDANT:  Yes, I have, Your Honor.

 7                 THE COURT:  Have you had enough time to discuss

 8     the charge -- the charges with your attorney?

 9                 THE DEFENDANT:  Yes, I have, Your Honor.

10                 THE COURT:  Has your lawyer explained to you the

11     elements and the nature of each of the offenses charged?

12                 THE DEFENDANT:  He has, Your Honor.

13                 THE COURT:  Has he also told you about the

14     penalties that may be imposed?

15                 THE DEFENDANT:  Yes, Your Honor.

16                 THE COURT:  Mr. Reddington, are you satisfied your

17     client understands the charges contained in Counts 1 and 2 of

18     the superseding indictment and the penalties that can be

19     imposed?

20                 MR. REDDINGTON:  Yes, sir.

21                 THE COURT:  Now, Mr. Soto, you're charged in what

22     is called a superseding indictment.  It contains three counts.

23     Under the plea agreement, you're pleading guilty to two of

24     those counts and you've also accepted the forfeiture as set

25     forth in this superseding indictment.  I'm going to read to you

1    Count 1.  This is one of the counts to which you're pleading

2    guilty.

3              Count 1 alleges that on or about March 15, 2017,

4    in the District of Maine, which means the state of Maine, you

5    knowingly and intentionally distributed a mixture or substance

6    containing fentanyl in violation of federal criminal law.  Do

7    you understand the charge set forth in Count 1 of the

8    superseding indictment?

9              THE DEFENDANT:  Yes, I do, Your Honor.

10             THE COURT:  Count 2 alleges that on or about

11   March 14, 2017, again in the District of Maine, you knowingly

12   and intentionally distributed a mixture or substance containing

13   fentanyl, again in violation of federal criminal law; do you

14   understand the charge set forth in Count 2 of the superseding

15   indictment?

16             THE DEFENDANT:  Yes, I do, Your Honor.

17             THE COURT:  There is an allegation of a forfeiture

18   and it says in here that you shall forfeit to the United States

19   a Smith & Wesson 9mm pistol and do you understand the nature of

20   the forfeiture to which you are consenting?

21             THE DEFENDANT:  Yes, I do, Your Honor.

22             THE COURT:  I'm going to take a moment, Mr. Soto,

23   and review with you the penalties that may be applicable to the

24   crimes to which you're pleading guilty.  The penalties are the

25   same, but the penalties are applicable to each crime; do you

1   understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  There's under the law a gradation in

4   terms of penalty and under the plea agreement, as we will get

5   into in a moment, you are conceding that you have had a prior

6   conviction for a felony drug offense; do you understand that?

7          THE DEFENDANT:  Yes, I do, Your Honor.

8          THE COURT:  Where there -- where the Government

9   has established a prior felony drug offense, the following

10  penalties apply.

11         You're subject to being placed in jail for a

12  period not to exceed 30 years.  You're subject to a fine not to

13  exceed $2 million, and it can be both prison and a fine.

14  Following any term of imprisonment, you must be on supervised

15  release for at least six years and you could be on supervised

16  release for the rest of your life.

17         If you were to violate a term of supervised

18  release, you could go back to jail for a period not to exceed

19  three years for each violation.  You're subject to a special

20  assessment of $100 for each count for a total of $200.  You're

21  subject to an order of restitution requiring you to pay any

22  victim of the offense and any family of the victim of the

23  offense certain damages that may have been caused by your

24  criminal acts.  Finally, if you're not a United States citizen,

25  you may be removed from the United States, denied citizenship

1   and denied admission to the United States in the future.

2           Do you understand that these are the maximum and,

3   in some cases, minimum penalties that may be applicable to the

4   crimes to which you're pleading guilty?

5           THE DEFENDANT:  Yes, I do, Your Honor.

6           THE COURT:  Now, although I'm sure you understand

7   this, Mr. Soto, I want it clear that you do understand that the

8   law does not require you to come into court today and plead

9   guilty; do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  In other words, if you were to tell me

12  right now that you're having second thoughts and you wanted to

13  plead not guilty to either of these crimes or both of them, I

14  would let you right now withdraw your guilty plea and plead not

15  guilty; do you understand?

16          THE DEFENDANT:  I understand, Your Honor.

17          THE COURT:  You're going to have the right to

18  change your mind and plead not guilty up until the time today

19  that I accept your guilty plea, if I do accept it; do you

20  understand?

21          THE DEFENDANT:  I do, Your Honor.

22          THE COURT:  I'm going to take a moment and review

23  with you the other rights that you have that you're waiving or

24  giving up by pleading guilty.

25          You have the right to trial by a jury.  You have

1   the right to the assistance of your lawyer at such a trial and

2   if you cannot afford a lawyer, you would have the right to have

3   a lawyer appointed for you at Government expense; do you

4   understand?

5               THE DEFENDANT:  I do, Your Honor.

6               THE COURT:  At trial, you would be presumed

7   innocent and the Government would have the burden of proving

8   you guilty beyond a reasonable doubt and you would not have the

9   burden of proving that you're not guilty; do you understand?

10              THE DEFENDANT:  I do, Your Honor.

11              THE COURT:  At trial, the Government's witnesses

12  would have to come into open court and testify in front of you

13  and your lawyer.  Your lawyer would have the opportunity to

14  cross-examine any Government witness, to object to evidence

15  that the Government might offer and to offer evidence on your

16  behalf.  Your lawyer would also have the right to compel the

17  attendance of witnesses at trial who might prove helpful to

18  your case; do you understand?

19              THE DEFENDANT:  I do, Your Honor.

20              THE COURT:  Now, you would have the right to

21  testify at trial if you wanted to, but you would also have the

22  right not to testify and you could not be required to testify

23  at a trial.  If you chose not to testify, I would instruct the

24  jury that they could draw no inference or suggestion of guilt

25  from the fact you did not testify; do you understand?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  If I accept your guilty plea, you will

3     have given up your right to a trial and the other rights I've

4     just described to you and there will be no trial of any kind on

5     these charges; do you understand?

6          THE DEFENDANT:  I do, Your Honor.

7          THE COURT:  If I proceed to enter a judgment of

8     guilty and sentence you on the basis of your guilty plea, and

9     if all that happens, except for very limited circumstances you

10    will have no right of appeal from your convictions; do you

11    understand?

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  Now, as part of your pleading guilty,

14    I must find there is a factual basis for your guilty pleas and

15    to assure myself there is such a factual basis, I will be

16    asking you questions about the conduct that gave rise to these

17    charges and you must answer my questions truthfully; do you

18    understand?

19         THE DEFENDANT:  I do, Your Honor.

20         THE COURT:  In light of all that I've just

21    explained to you, Mr. Soto, all the rights that you have that

22    you're waiving or giving up by pleading guilty, do you still

23    choose to plead guilty to the charges contained in Counts 1 and

24    2 of the superseding indictment?

25         THE DEFENDANT:  I do, Your Honor.

```
 1                    THE COURT:  And do you still consent to the
 2       forfeiture?
 3                    THE DEFENDANT:  Yes, I do, Your Honor.
 4                    THE COURT:  Thank you.  You may be seated.
 5                    THE DEFENDANT:  Thank you.
 6                    THE COURT:  Mr. Joyce, I have before me a
 7       prosecution version of the offense, which is dated June 11,
 8       2019.  Does this prosecution version contain at a minimum the
 9       evidence that the Government would bring to bear if the matter
10       were to go to trial?
11                    MR. JOYCE:  Yes, Your Honor.
12                    THE COURT:  Thank you.  Mr. Reddington, have you
13       had an opportunity to review the prosecution version in this
14       case?
15                    MR. REDDINGTON:  Yes, Your Honor.
16                    THE COURT:  Are you satisfied the Government can,
17       in fact, produce the evidence set forth in the prosecution
18       version?
19                    THE DEFENDANT:  I am.
20                    THE COURT:  Mr. Reddington, are you also satisfied
21       that the admissible part of that evidence would permit a
22       properly instructed jury to determine beyond a reasonable doubt
23       that your client is guilty of each of the crimes to which he is
24       pleading guilty?
25                    MR. REDDINGTON:  Yes, Your Honor.
```

```
 1                    THE COURT:  And also would permit a properly
 2      instructed jury to determine that it is appropriate for him to
 3      consent to the forfeiture?
 4                    MR. REDDINGTON:  Yes.
 5                    THE COURT:  Mr. Soto, would you stand.  I have
 6      before me a document entitled prosecution version, which is
 7      dated June 11, 2019; have you seen that document?
 8                    THE DEFENDANT:  Yes, I have, Your Honor.
 9                    THE COURT:  Now, this is a very important
10      document, correct?
11                    THE DEFENDANT:  Yes.
12                    THE COURT:  It basically sets forth in some detail
13      what it is the Government says that you did to commit these
14      crimes, correct?
15                    THE DEFENDANT:  Yes, Your Honor.
16                    THE COURT:  Have you had an opportunity to review
17      it carefully?
18                    THE DEFENDANT:  Yes, I have, Your Honor.
19                    THE COURT:  Did you review it carefully?
20                    THE DEFENDANT:  Yes, I have, Your Honor.
21                    THE COURT:  Do you know and understand exactly
22      what it is the Government says it would prove if the matter
23      went to a trial?
24                    THE DEFENDANT:  Yes, I do, Your Honor.
25                    THE COURT:  Now, again I have a very important
```

1    question for you, Mr. Soto, and require an honest and truthful

2    answer.  Do you disagree in any way with what is set forth in

3    the prosecution version?

4                    THE DEFENDANT:  I do not, Your Honor.

5                    THE COURT:  Is the information set forth in the

6    prosecution version true to your own personal knowledge?

7                    THE DEFENDANT:  Yes, Your Honor.

8                    THE COURT:  Based on my review of the prosecution

9    version in this case, your lawyer's responses and your own

10   responses, I do find there is a factual basis for the guilty

11   pleas to the crimes charged in Counts 1 and 2 of the

12   superseding indictment and the factual basis for the

13   forfeiture.

14                    The next part of this process is to make sure

15   you're doing what you're doing today of your own free will.

16   Has anyone threatened you or has anyone attempted to force you

17   to get you in any way to plead guilty?

18                    THE DEFENDANT:  No, Your Honor.

19                    THE COURT:  I understand there's a plea agreement

20   in this case and, Mr. Joyce, other than the plea agreement, has

21   the Government made any other formal plea offers to the

22   defendant?

23                    MR. JOYCE:  Yes.

24                    THE COURT:  Would you tell me about them.

25                    MR. JOYCE:  I transmitted an offer to Attorney

1    Zerillo, who represented the defendant at that time, on

2    February 2, 2018.  I transmitted an offer to Attorney Turndorf

3    who represented the defendant at this time, September 28, 2018,

4    and I transmitted an offer to Mr. Reddington on February 19,

5    2019.  I suggest to the Court that all of those prior offers

6    were less favorable to the defendant than the one previously

7    before the Court today.

8                    THE COURT:  All right.  Thank you.  Mr.

9    Reddington, I realize that you were not counsel during two of

10   those offers.  You were counsel at the last one, the

11   February 19, 2019; is that correct?

12                   MR. REDDINGTON:  Yes.

13                   THE COURT:  And do you agree with Mr. Joyce's

14   characterization that the offer made to you on February 19,

15   2019, was less favorable than the one that's set forth in the

16   plea agreement?

17                   MR. REDDINGTON:  Yes.

18                   THE COURT:  Mr. Soto, you've heard what Mr. Joyce

19   said concerning the plea offers that have been made to you.  He

20   told me that they made a plea offer to your -- to you through

21   your former attorney, Attorney Zerillo, on February 2, 2018; do

22   you recall that plea offer?

23                   THE DEFENDANT:  I don't, Your Honor.

24                   THE COURT:  You don't.  Do you want to --

25                   THE DEFENDANT:  I knew what time of the day he was

1    suppose to come and see me.

2              THE COURT:  Oh, I see.  So, did you get that plea

3    offer?

4              THE DEFENDANT:  I never did, Your Honor.

5              THE COURT:  Okay.  Why don't -- do you have -- let

6    me put it this way.  Do you have any reason to believe that the

7    plea offer that was made to Mr. Zerillo was more favorable than

8    the one that you've agreed to here in court today?

9              THE DEFENDANT:  I definitely do not.

10             THE COURT:  Okay, thank you.  Did you receive the

11   plea offer through Attorney Turndorf, which is dated

12   September 28, 2018?

13             THE DEFENDANT:  Yes, I did, Your Honor.

14             THE COURT:  And do you agree that the plea offer

15   that was made to you through Attorney Turndorf on September 28,

16   2018, was less favorable than the plea agreement that's set

17   forth in the written plea agreement today?

18             THE DEFENDANT:  Yes, I do, Your Honor.

19             THE COURT:  Did you also receive a plea offer

20   through your current counsel, Mr. Reddington, of February 19,

21   2019?

22             THE DEFENDANT:  Yes, I did, Your Honor.

23             THE COURT:  And do you also agree that that plea

24   offer was less favorable than the one contained in the written

25   plea agreement today?

 1            THE DEFENDANT:  Yes, Your Honor.

 2            THE COURT:  And turning to the Turndorf plea

 3    agreement of September 2018 and the Reddington plea offer of

 4    February 2019, did you reject both those offers?

 5            THE DEFENDANT:  Yes, I did, Your Honor.

 6            THE COURT:  And I take it you've accepted the one

 7    that brings us here in court today; is that right?

 8            THE DEFENDANT:  Yes, I did.

 9            MR. JOYCE:  Your Honor, if I may?

10            THE COURT:  Yes.

11            MR. JOYCE:  The plea offers to Mr. Zerillo and Mr.

12    Turndorf were identical.  They simply replaced one name for the

13    other one when counsel changed.

14            THE COURT:  Oh, okay.  So, you did actually -- if

15    that's correct, and I have no reason to disbelieve it, you did

16    receive the Zerillo plea offer when you received -- in

17    September of 2018, the Turndorf plea offer?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Thank you, Mr. Joyce.  Now, I have

20    before me a plea agreement in this case and I need to review

21    with you the contents of the plea agreement.  First, I'm going

22    to ask you to turn to Page 6 of that plea agreement.

23            Do you have a copy of that, the original of it

24    with you?  Do you see over the signature line for Cameron Soto

25    a signature?

1                MR. REDDINGTON:  I believe, Judge, I do have it

2        here.

3                THE COURT:  Do you see a signature above the

4        signature line for Cameron Soto, defendant.

5                THE DEFENDANT:  Yes, I do, Your Honor.

6                THE COURT:  Is that your signature?

7                THE DEFENDANT:  Yes, it is, Your Honor.

8                THE COURT:  Did you read this agreement before you

9        signed it?

10               THE DEFENDANT:  Yes, I did, Your Honor.

11               THE COURT:  Did you have an opportunity to consult

12       with Mr. Reddington concerning the significance of the plea

13       agreement before you signed it?

14               THE DEFENDANT:  Yes, I did, Your Honor.

15               THE COURT:  Did you understand what you were

16       signing?

17               THE DEFENDANT:  Yes, I did, Your Honor.

18               THE COURT:  Did you sign it voluntarily?

19               THE DEFENDANT:  Yes, I did, Your Honor.

20               THE COURT:  In signing this agreement, did you

21       intend to agree to all its terms and conditions?

22               THE DEFENDANT:  I did, Your Honor.

23               THE COURT:  Now, there are several provisions of

24       this plea agreement I'd like to review with you.  First part of

25       the plea agreement addresses things we've all ready discussed.

1   Paragraph 1 talks about the guilty plea and your decision to

2   plead guilty to Counts 1 and 2 of the superseding indictment

3   and the Government's agreeing to dismiss Count 3 of the

4   superseding indictment when you're sentenced on Counts 1 and 2;

5   do you understand that?

6               THE DEFENDANT:  I do, Your Honor.

7               THE COURT:  Paragraph 2 talks about the sentencing

8   penalties that may be applicable to each of the counts of

9   conviction and I reviewed that earlier today; do you remember

10  that?

11              THE DEFENDANT:  I do, Your Honor.

12              THE COURT:  Count 3 -- Paragraph 3 talks about the

13  following, agreement regarding defendant's conduct, and this is

14  what it says:

15              The defendant admits that his conduct giving rise

16  to the offense conviction on Count 2 of the superseding

17  indictment was the but for cause of the overdose death of E.R.;

18  do you see that?

19              THE DEFENDANT:  Yes, I do, Your Honor.

20              THE COURT:  Now, down below it talks about, on

21  Paragraph 5A, that the parties agree that the base offense

22  level is 43 pursuant to Section 2D1.1(a)(1).  Have you had an

23  opportunity to speak with your attorney about how that base

24  offense level 43 is calculated?

25              THE DEFENDANT:  Yes, I have, Your Honor.

1          THE COURT:  And do you understand that by

2    admitting that your conduct giving rise to the offense of

3    conviction of Count 2 of the superseding indictment was the but

4    for cause of the overdose death of E.R. you are, in effect,

5    admitting that your base offense level will be 43 under the

6    United States Sentencing Commission Guidelines?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Paragraph 4 talks about an agreement

9    regarding prior conviction.  It states as follows:

10          The United States will file an information

11   alleging a prior conviction pursuant to 21 U.S.C. Section 851

12   in advance of the -- it should say of defendant's entry of his

13   guilty plea.  The defendant agrees to affirm his prior

14   conviction in advance of sentencing.

15          Now, as it happens, Mr. Soto, as I'm sure you're

16   aware, the Government has filed an information and it did so on

17   June 11, 2019, charging a prior conviction in accordance with

18   this provision of the plea agreement; are you aware of that?

19          THE DEFENDANT:  I am, Your Honor.

20          THE COURT:  Have you seen that information

21   charging prior conviction document?

22          THE DEFENDANT:  Yes, I have, Your Honor.

23          THE COURT:  It reads in part as follows:

24          At the time of the commission of the offenses

25   charged in Counts 1 and 2 -- it should say of the above-

1    captioned superseding indictment -- defendant Cameron Soto had

2    been convicted of the following felony drug offense, and it

3    goes on to say unlawful trafficking in scheduled drugs in the

4    Knox County Superior Court, docket number ROCSC-cr-2014-0001,

5    judgment having entered on about September 22, 2014.  And it

6    says -- it talks about the United States intending to rely on

7    such conviction in seeking the imposition of enhanced

8    penalties.

9                  So, my question for you, Mr. Soto, is do you

10   affirm here today in open court that you were the Cameron Soto

11   who was convicted of the crime of unlawful trafficking in

12   scheduled drugs that I just related to you?

13                  THE DEFENDANT:  Yes, I do, Your Honor.

14                  THE COURT:  I'm now going to turn to the

15   agreements regarding sentencing.  Now, some of these

16   recommendations are what they call binding recommendations, and

17   we will talk about that in a moment, and other recommendations

18   are non-binding recommendations.

19                  Do you understand -- have you spoken with your

20   attorney concerning the significance of what a binding

21   recommendation is and a non-binding recommendation?

22                  THE DEFENDANT:  I certainly have, Your Honor.

23                  THE COURT:  What the binding recommendation says

24   is as follows:

25                  A term of imprisonment imposed by the Court shall

1    be not less than 192 months and not more than 288 months.  The

2    parties agree that a sentence within this range is an

3    appropriate disposition of this case.  If the Court determines

4    that a sentence in excess of 288 months is appropriate, the

5    defendant may withdraw his guilty plea pursuant to

6    Rule 11(c)(1)(C).  If the Court determines that a sentence of

7    less than 192 months is appropriate, the Government may

8    withdraw from this agreement; did I read that correctly?

9              THE DEFENDANT:  You did, Your Honor.

10              THE COURT:  And do you understand what we're

11   talking about here is that the binding recommendation of the

12   parties contemplates that I would sentence you to not less than

13   192 months, which is 16 years in prison, nor more than

14   288 months, which is 24 years in prison; do you understand

15   that?

16              THE DEFENDANT:  I do, Your Honor.

17              THE COURT:  And basically if I impose a sentence

18   within or between 16 years and 24 years, 192 months and

19   288 months, then you have agreed with the Government that a

20   sentence anywhere within that range is an appropriate sentence;

21   do you understand that?

22              THE DEFENDANT:  I do, Your Honor.

23              THE COURT:  Now, if I decide that I'm required to

24   impose a sentence of less than 120 -- 192 months or less than

25   16 years, the Government may consider that a violation of the

1  terms of the plea agreement and it may insist that the

2  agreement is void; do you understand that?

3              THE DEFENDANT:  I do, Your Honor.

4              THE COURT:  On the other hand, if I impose a

5  sentence of more than 24 years and find that it's necessary for

6  me to do that, you will have the right to declare the plea

7  agreement void; do you understand that?

8              THE DEFENDANT:  I do, Your Honor.

9              THE COURT:  But you will not have the right to

10  declare the plea agreement void if I impose a sentence

11  somewhere between 16 years and 24 years; do you understand?

12              THE DEFENDANT:  Yes, I do, Your Honor.

13              THE COURT:  Now, there are several non-binding

14  recommendations of the parties.  I've all ready eluded to the

15  first non-binding recommendation and, that is, that the base

16  offense level is 43 pursuant to the guidelines.  43 as it turns

17  out is a provision that is triggered by the fact that you have

18  a prior conviction, which you've just admitted, for a felony

19  drug offense and also that your crime resulted in the death of

20  another individual; do you understand that?

21              THE DEFENDANT:  I do, Your Honor.

22              THE COURT:  And you've all ready agreed that the

23  offense of conviction in Count 2 was the but for cause of the

24  overdose death of E.R., correct?

25              THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  And you've also agreed that you were

2     the individual who was convicted of the crime in Knox County

3     that I just told you about, correct?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And that means that there will be a

6     significant chance, even though the recommendation is

7     non-binding, that I will conclude that the base offense level

8     is 43 under the United States Sentencing Commission Guidelines;

9     do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  This goes on to say that the parties

12     agree to recommend that you've accepted responsibility for the

13     -- it should say offenses of conviction and that I should

14     reduce your adjusted offense level pursuant to the federal

15     guidelines; do you understand that?

16          THE DEFENDANT:  I do, Your Honor.

17          THE COURT:  This goes on to say that the parties

18     expressly agree and understand that should the Court reject

19     either or both of the non-binding recommendations of the

20     parties, the defendant will not thereby be permitted to

21     withdraw his plea of guilty.  The parties agree and understand

22     that the Court has the discretion to impose any lawful sentence

23     consistent with the binding recommendations set forth in

24     Paragraph 4A.  I've all ready talked to you at some length

25     about the impact of the binding recommendation.  Do you

1  understand the binding recommendation?

2  THE DEFENDANT:  I do, Your Honor.

3  THE COURT:  For the non-binding recommendations,

4  what this means is that the Court has the discretion to impose

5  a sentence that it deems as appropriate; do you understand

6  that?

7  THE DEFENDANT:  I do, Your Honor.

8  THE COURT:  And if I decide that I -- that within

9  the binding recommendation as set forth that the provisions of

10  both the guidelines and the law require me to impose a sentence

11  beyond that being recommended by the parties, except for the

12  binding recommendation you will have no right then to withdraw

13  your guilty plea; do you understand what I just said?

14  THE DEFENDANT:  I do, Your Honor.

15  THE COURT:  This goes on to say that you agree not

16  to object to a request from family members of E.R. to speak at

17  the sentencing in this matter or to submit written materials

18  for the Court in connection with the sentencing or both.

19  Do you understand that someone from E.R.'s family

20  may appear at your sentencing hearing and that you will not

21  object to their speaking?

22  THE DEFENDANT:  Yes, Your Honor.

23  THE COURT:  Now, in addition, I made reference

24  earlier to a restitution obligation and it may be under the law

25  that you're required to pay restitution to the victim or the

1    victim's family and do you understand that as well?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  I'm going to take a moment and review

4    with you the appeal waivers here.  It says, the defendant is

5    aware that Title 18, United States Code Section 3742, affords a

6    defendant the right to appeal the sentence imposed.  Knowing

7    that, the defendant waives a right to appeal the following.

8              A.  Defendant's guilty plea and any other aspect

9    of defendant's conviction in the above-captioned case.  I'm

10   going to stop there for a second.  You may recall that earlier

11   today I told you that your right to appeal your guilty plea,

12   your conviction, was going to be limited; do you remember that?

13             THE DEFENDANT:  I do, Your Honor.

14             THE COURT:  However, under the terms of this

15   agreement, and these agreements are usually upheld as a matter

16   of law, you are waiving or giving up any right to challenge the

17   sufficiency of your guilty plea or any other aspect of your

18   conviction in this case; do you understand that?

19             THE DEFENDANT:  Yes, I do, Your Honor.

20             THE COURT:  This goes on to say that you waive the

21   right to appeal the following:  A sentence of imprisonment that

22   does not exceed 240 months.  Now, unlike your right to appeal

23   your guilty plea, you would have, but for the terms of this

24   agreement, a right to appeal any sentence that I impose to a

25   higher court; do you understand that?

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  However, under the terms of this

3    agreement, and again these agreements are usually upheld as a

4    matter of law, if I impose a sentence of 240 months or less,

5    you are waiving or giving up the right to appeal that sentence

6    to a higher court; do you understand?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  That means, for all intents and

9    purposes, if I impose a sentence of 240 months or less, I will

10   be the only judge to review the legality of that sentence; do

11   you understand?

12         THE DEFENDANT:  Yes, I do, Your Honor.

13         THE COURT:  Finally, this says on Paragraph 10

14   that you agree to waive any claim to or assist the United

15   States in affecting the forfeiture of any product -- any

16   property subject to the forfeiture under the law of the United

17   States including, but not limited to, a Smith & Wesson 9mm

18   pistol bearing a certain serial number.

19         Do you understand you're forfeiting any right to

20   that Smith & Wesson pistol?

21         THE DEFENDANT:  Yes, I do, Your Honor.

22         THE COURT:  Now, as far as sentencing is

23   concerned, within the constraints that the plea agreement

24   imposes, and again I've all ready talked to you about those

25   constraints, basically the constraint being that under the plea

1    agreement 16 years and -- somewhere between 16 and 24 years;

2    you understand what I just said?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Within that constraint, the law

5    permits you and your lawyer and the prosecutor to make

6    recommendations to me regarding your sentence.  However, the

7    authority to determine the appropriate sentence in this case

8    rests with me as the judge in this court and if I do not accept

9    those recommendations, you will, except if I impose a sentence

10   of more than 288 months, have no right to withdraw your guilty

11   plea; do you understand?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  Sentencing Commission's advisory

14   guidelines will be considered by me in determining your

15   sentence.  I have an obligation to calculate the applicable

16   sentencing guideline range, to consider that range, to consider

17   possible increases and decreases under the guidelines.  Once I

18   fix the applicable guideline sentence range, I treat that range

19   as advisory and I sentence you in accordance with certain

20   factors set forth in federal criminal law, focusing on your

21   history and characteristics and the nature and circumstances of

22   the offenses as well as certain other factors.

23               Have you and your lawyer talked about how these

24   issues may affect your sentence?

25               THE DEFENDANT:  Yes, I have, Your Honor.  He has.

1          THE COURT:  I can't determine the advisory

2   guideline sentence until I've read a presentence report that

3   the probation office will prepare and until I've given your

4   lawyer and the prosecutor an opportunity to challenge the facts

5   in the report.

6          After I determine the advisory guideline that

7   applies to your case, I still have the authority to impose a

8   sentence that is more severe or it could be less severe than

9   the sentence called for by the applicable guideline; do you

10  understand?

11         THE DEFENDANT:  Yes, I do, Your Honor.

12         THE COURT:  And except for the earlier provision

13  that I've talked to you about bracketing the sentence between

14  16 and 24 years, if I impose a sentence that is more severe

15  than the one called for by the guideline, you will still not be

16  permitted to withdraw your guilty plea; do you understand?

17         THE DEFENDANT:  Yes, I do, Your Honor.

18         THE COURT:  If a term of imprisonment is imposed,

19  you will be required to actually serve in a jail or prison all

20  of the imprisonment term, except any good time deductions, and

21  you will not be permitted to serve any part of it on parole; do

22  you understand?

23         THE DEFENDANT:  Yes, I do, Your Honor.

24         THE COURT:  Aside from the written plea agreement,

25  has anyone made any promises to you in an effort to get you to

1   plead guilty?

2           THE DEFENDANT:  No, they haven't, Your Honor.

3           THE COURT:  Has anyone made any promise to you,

4   other than what is set forth in the plea agreement, as to what

5   the prosecutor's recommendation is going to be at the time of

6   sentencing?

7           THE DEFENDANT:  No, they haven't, Your Honor.

8           THE COURT:  Has anyone made any promise to you as

9   to what kind of sentence I will impose?

10          THE DEFENDANT:  No, they haven't, Your Honor.

11          THE COURT:  I ask you finally then, do you still

12  wish to plead guilty to the charges contained in Counts 1 and 2

13  of the superseding indictment?

14          THE DEFENDANT:  Yes, I do, Your Honor.

15          THE COURT:  And do you still wish to consent to

16  the forfeiture?

17          THE DEFENDANT:  Yes, I do, Your Honor.

18          THE COURT:  And Mr. Reddington, do you as Mr.

19  Soto's lawyer still recommend I accept the guilty plea and the

20  consent to the forfeiture?

21          MR. REDDINGTON:  Yes, Your Honor.

22          THE COURT:  Mr. Cameron Soto, since you

23  acknowledge that you are, in fact, guilty as charged in

24  Counts 1 and 2 of the superseding indictment, and since you

25  consent to the forfeiture contained in that indictment, and

1  since I find there is a factual basis for the plea and consent,

2  and since I find based on your responses to my questions and my

3  direct observations that you are competent to enter a plea and

4  consent, and since I find you know of your right to a trial and

5  the rights associated with the right to a trial, and since I

6  further find you know the maximum possible punishment and

7  minimum punishment that may be imposed if you are convicted,

8  and since I find that you have not been coerced, but that you

9  have voluntarily and knowingly tendered a plea of guilty to

10  Counts 1 and 2 of the superseding indictment, I now accept your

11  guilty plea as tendered and I approve the consent to the

12  forfeiture.  I hereby order the preparation of the customary

13  presentence investigation report.

14           I take it Mr. Soto is detained?

15           MR. JOYCE:  He is, Your Honor.

16           THE COURT:  And the Government's intention is to

17  have him remain detained?

18           MR. JOYCE:  Yes, please.

19           THE COURT:  I take it there's no objection to

20  continued detention?

21           MR. REDDINGTON:  No, Your Honor.

22           THE COURT:  So, Mr. Soto, what's going to happen

23  next is someone from the probation office will come by and he

24  or she will meet with you and they will interview you to obtain

25  more information about you.  That information will help me

1   better understand not only what you did, but who you are so

2   that I can impose a sentence that is fair to you and also just

3   for society.

4            You'll have an opportunity to review the

5   presentence investigation report and I'm going to ask that you

6   very, very carefully review the report and make sure it's

7   accurate because I do not want to sentence you on the basis of

8   any inaccurate information; do you understand?

9            THE DEFENDANT:  I do, Your Honor.

10            THE COURT:  Do I have your promise that you'll

11   carefully review the report and make sure it is accurate?

12            THE DEFENDANT:  Yes, you do, Your Honor.

13            THE COURT:  Mr. Reddington's a very fine lawyer

14   and Mr. Aranson's a very fine lawyer, but neither of them has

15   led your life, so we're all going to be relying on you to make

16   sure the contents of the report are correct and accurate in

17   every detail; do you understand?

18            THE DEFENDANT:  I do, Your Honor.

19            THE COURT:  If you see any inaccuracies in the

20   report, just let your lawyers know and I'm sure they will

21   inform the Court and we will attempt to resolve whatever is

22   inaccurate in the report; do you understand?

23            THE DEFENDANT:  I do, Your Honor.

24            THE COURT:  Once any issues of the report have

25   been resolved, the matter will be sent back here in this

1    courthouse for the imposition of sentence; do you understand

2    what's going to happen next?

3                    THE DEFENDANT:  I do, Your Honor.

4                    THE COURT:  Is there anything further from the

5    Government?

6                    MR. JOYCE:  Your Honor, as discussed in chambers,

7    I move to dismiss the initial indictment in this matter

8    having -- a superseding indictment now having been filed.

9                    THE COURT:  Is there any objection?

10                   MR. REDDINGTON:  No, Your Honor.

11                   THE COURT:  Upon motion of the Government and

12   without objection on the part of the defendant, the Court

13   hereby dismisses the original indictment filed in this case.

14   Anything further?

15                   MR. JOYCE:  No, Your Honor.  Thank you.

16                   THE COURT:  Anything further from the defense?

17                   MR. REDDINGTON:  No, Your Honor.  Just one more

18   question.

19                   THE COURT:  Yes.

20                   MR. REDDINGTON:  Count 3 is being dismissed?

21                   THE COURT:  At the time of sentencing.

22                   MR. REDDINGTON:  At the time of sentencing.  Yes,

23   thank you.

24                   THE COURT:  Yes.  Anything further, Mr.

25   Reddington?

1          MR. REDDINGTON:  No, Your Honor, thank you.

2          THE COURT:  The defendant is hereby remanded to

3     the custody of the United States Marshal for the District of

4     Maine and he is to be retained in that custody pending further

5     order of the Court.  Court will stand in recess.

6                    (End of proceeding)

7                **C E R T I F I C A T I O N**

8     I, Dennis Ford, Official Court Reporter for the United States

9     District Court, District of Maine, certify that the foregoing

10    is a correct transcript from the record of proceedings in the

11    above-entitled matter.

12    Dated:  December 1, 2021

13              /s/ Dennis Ford

14              Official Court Reporter