UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cr-00157-JAW |
| | ) | |
| CAMERON SOTO | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a nineteen-year term of imprisonment moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the inmate's health conditions do not present extraordinary and compelling reasons for compassionate release and the Court weighs the § 3553(a) factors against release in light of the seriousness of the crime and the fact that the inmate has yet to serve a substantial portion of his sentence.

## I.    BACKGROUND

### A.    Factual Background

On November 14, 2017, Mr. Soto was indicted for distribution of fentanyl with death or serious bodily injury resulting, distribution of fentanyl, and possession of a firearm by a felon, as well as two forfeiture allegations. *Indictment* (ECF No. 32). On June 7, 2019, a grand jury issued a superseding indictment, eliminating the death or serious bodily injury resulting allegation from count one. *Superseding Indictment* (ECF No. 112). On June 11, 2019, the United States of America (Government) filed an information under 21 U.S.C. § 851, alleging a prior felony drug trafficking

conviction and seeking enhanced penalties under 21 U.S.C § 841 (b)(1)(c). *Information Charging Prior Conviction* (ECF No. 118). On June 13, 2019, Mr. Soto pleaded guilty to counts one and two of the superseding indictment. *Min. Entry* (ECF No. 121).

At the December 7, 2020, Zoom sentencing hearing the Court made the following guideline calculations: Mr. Soto's guideline sentence range was from 360 to 720 months, the guideline term of supervised release was six years, he faced a fine range of $50,000 to $4 million, and he was subject to a mandatory special assessment of $200. *Tr. Proceedings* at 27:15-21 (ECF No. 182) (*Sentencing Tr.*). The Court sentenced Mr. Soto to nineteen years (228 months) imprisonment, six years of supervised release, no fine, restitution in the amount of $4,240, and a $200 special assessment. *Id.* at 76:15-17; *J.* at 2-6 (ECF No. 180). Mr. Soto is now 29 years old and is incarcerated in FCI Berlin, New Hampshire. Fed. Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/inmateloc/ (last visited Sept. 19, 2022).

### B. Procedural History

On July 6, 2021, Mr. Soto filed his first pro se motion for compassionate release. *Mot. for Compassionate Release Under the First Step Act* (ECF No. 184). On July 21, 2021, the Court appointed initial counsel for Mr. Soto. *Appointment of Counsel and Scheduling Order* (ECF No. 191). On February 7, 2022, Mr. Soto filed an Amended Petition for Compassionate Release. *Cameron Soto's Am. Pet. for Compassionate Release* (ECF No. 217) (*Def.'s Mot.*). On February 14, 2022, the Government responded in opposition. *Gov't Resp. to Def.'s Am. Pet. for Compassionate Release*

(ECF No. 220) (*Gov't's Opp'n*).  Mr. Soto replied on March 11, 2022.  *Reply to Gov't's Resp. to Cameron Soto's Am. Pet. for Compassionate Release* (ECF No. 223) (*Def.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Cameron Soto's Motion for Compassionate Release

#### 1.   COVID-19

Mr. Soto submits that his health conditions and related risk of contracting COVID-19 warrant compassionate release.  Mr. Soto explains that he "suffers from several medical issues," including obesity, hypertension, and depression, which place him "at a high risk for serious illness for complications related to COVID-19." *Def.'s Mot.* at 2-3.  He further submits that "due to persistent health and social inequalities disproportionately impacting minorities, [he] is at increased risk for severe illness on account of his [Hispanic] ethnicity." *Id.* at 3 (citing a CDC study on COVID-19 hospitalization rates).  Mr. Soto reasons that "under the conditions at the BOP and the risk of death associated with a COVID infection or the long-term side effects of an infection, these health concerns are a potentially dangerous set of circumstances which justify compassionate release." *Id.* at 9.  He submits that "[e]ven if this Court finds that [his] specific medical issues do not meet the extraordinary and compelling circumstances [standard], the COVID-19 pandemic itself and the resulting impact in prisons meets that criteria." *Id.* at 12.  He cites cases in which courts have "considered circumstances of BOP confinement when considering reduction in sentences," contending that his own lengthy sentence "fundamentally changed for the

worse" as a result of the pandemic and related lockdown restrictions.  *Id.* at 13-14.
He notes that although the Court recommended his enrollment in the BOP's 500-hour
drug treatment program at sentencing, "he has been able to access only one, live, drug
education course" and has also been unable to engage in education programming due
to facility lockdowns.  *Id.* at 15.

Mr. Soto explains that in his initial pro se motion for compassionate release,
he "incorrectly stated he was not offered the vaccine."  *Id.* at 4.  Mr. Soto confirms
that he was offered the COVID-19 vaccine but declined "due to Mr. Soto's concerns
regarding his medical treatment at the jail, the history of the government
experimenting on inmates and individuals of color in this country, and fears of
complications from the vaccine while incarcerated."  *Id.*  He points to the many
examples of "mistreatment of prisoners and individuals of color" by the United States
government, such as the Tuskegee Syphilis Study and forced sterilization programs.
*Id.* at 9.  Mr. Soto says he "is willing to be vaccinated after he has had the opportunity
to consult with his primary care doctor in the community," *id.* at 4, and submits that
"refusing the vaccine is not justification for rejecting a plea for compassionate
release."  *Id.* at 9.

Mr. Soto stresses that "[t]he prison setting increases Mr. Soto's chances of
contracting COVID and his health conditions compound his risks, warranting
compassionate release," particularly with new outbreaks and new variants.  *Id.* at 11-
12.  Mr. Soto then contends that the "disparate treatment [of the co-defendants] at

the time of sentence is now compounded by the COVID pandemic," and "the[se] compounding effects" are "another reason to grant compassionate release." *Id.* at 20.

## 2.     The 18. U.S.C. § 3533 Factors

Mr. Soto argues that factors weighing the "nature and circumstance of the offence, . . . the weight of the evidence against the person, . . . the history and characteristics of the person, . . . [and] the nature and seriousness of the person's release" all weigh in favor of his compassionate release. *Def.'s Mot.* at 20-21.[1] Mr. Soto contends that "any concerns that the Court would have for Mr. Soto are alleviated by the fact that he will be on intense supervision upon his release and he has an incentive to stay out of prison." *Id.* at 22.

## 3.     Home Confinement

In the alternative, Mr. Soto asks the Court to "modify [his] sentence to home confinement" for the same COVID-19 reasons discussed above. *Id.* at 23.  He submits that the Bureau of Prisons (BOP) is authorized to transfer him to home confinement pursuant to the CARES Act, and contends that the Court, under 18 U.S.C. §§ 3624(c) and 3621(b)(4), has the authority to "recommend where a defendant should be

---

[1]     Mr. Soto chooses to address 18 U.S.C. § 3142(g) factors, noting that "18 U.S.C. § 3142(g)(3)(A-B) incorporates much of 18 U.S.C. § 3553(a)(1)(2)." *Def.'s Mot.* at 21.  Mr. Soto specifically requests the Court to consider the following factors:

> (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* at 20-21 (citing 18. U.S.C. § 3142(g)).

incarcerated" and that "nothing prevents [the Court] from doing so at any time the inmate is still serving his sentence." *Id.* at 26.  He requests that the Court do so now, if it denies his motion for compassionate release.

### B.    The Government's Opposition

As a threshold matter, the Government concedes that Mr. Soto has satisfied the exhaustion requirement.[2] *Gov't's Opp'n* at 6.

The Government first addresses Mr. Soto's COVID-19 argument, positing that Mr. Soto's "refusal to accept the COVID-19 vaccine undercuts the presence of 'extraordinary and compelling' circumstances for a sentence reduction." *Id.*  The Government acknowledges that Mr. Soto's "weight, depression, and hypertension" place Mr. Soto at "increased risk of severe illness from COVID-19" and that these conditions "could form the basis for a finding of extraordinary and compelling circumstances." *Id.*  The Government argues, however, that "underlying medical conditions that increase the risk for a severe COVID-19 outcome . . . must be viewed in light of the [individual's] medical history and circumstances," which here include Mr. Soto's refusal of the COVID-19 vaccine.  *Id.* at 6-7 (citing *United States v. Moore*, No. 14-315-06, 2020 U.S. Dist. LEXIS 232051, at *3 (E.D. Pa. Dec. 10, 2020)).  Citing a panoply of cases, the Government contends that a defendant's own refusal of the COVID-19 vaccine "'significantly weigh[s] against a finding that [the defendant] presents extraordinary and compelling circumstances based on his risk of serious

---

[2]     Mr. Soto submitted a request to the warden of FCI Berlin for compassionate release in April of 2021, which was denied.  *Request for Administrative Remedy* (ECF 184-1).

illness from COVID-19.'" *Id.* at 7-8 (quoting *United States v. Pelletier*, No. 2:12-cr-00119-GZS, 2021 U.S. Dist. LEXIS 76078 (D. Me. Apr. 21, 2021) and collecting cases).

The Government next addresses the § 3553(a) factors, arguing that these factors weigh against Mr. Soto's release because Mr. Soto "has not shown that he is no longer a danger to the community and has otherwise failed to demonstrate that he merits release under the section 3553(a) factors." *Id.* at 9. Specifically, the Government contends that Mr. Soto would "pose a danger to public safety if released" because of the serious nature of his criminal behavior, his "very significant criminal history," his prior repeat drug-trafficking offense, his below-guideline sentence, well below the recommended 360 to 720 months, and his service of only "about one-quarter of his sentence." *Id.* The Government posits that these factors taken as a whole "strongly disfavor" a sentence reduction. *Id.* at 10.

Finally, in response to Mr. Soto's request in the alternative for home confinement, the Government submits that "as this Court has previously observed, courts do not have the authority to direct BOP to place a defendant in home confinement." *Id.* (citing *United States v. Nygren*, No. 1:16-cr-206-JAW, 2020 U.S. Dist. LEXIS 129493, at *3 n.2 (D. Me. July 22, 2020)).

## C. Cameron Soto's Reply

In reply, Mr. Soto first reminds the court that he "is not seeking compassionate release because he is unvaccinated." *Def.'s Reply* at 2. He argues that "irrespective of [his] vaccination status, the continued risk of subsequent COVID-19 outbreaks constitutes extraordinary and compelling circumstances," *id.* at 1, and notes that

7

"[w]hile courts in this district have found failure to get the COVID-19 vaccine as a factor weighing against release, it is not an absolute bar." *Id.* at 2. Moreover, he contends that "even with the vaccine, individuals with certain underlying conditions such as hypertension remain at elevated risk for serious illness," *id.*, which poses a particular risk to inmates because "our state and federal prisons have been unable to effectively prevent transmission of COVID-19 and adequately care for those that have fallen ill." *Id.* at 3

Mr. Soto further reminds the Court of the "exceptionally difficult conditions of confinement" he has experienced as a result of COVID-19. *Id.* at 5. He states that COVID-19 has "reduced access to medical and mental health care . . . [and has] further sharpened the sentencing disparities between him and his co-defendants." *Id.* at 5. In support of his request for compassionate release, Mr. Soto further emphasizes that he has been an active participant in academic and mental health programming at the Cumberland County Jail. *Id.* at 5. Specifically, he has "successfully completed all classes that were available to him" while incarcerated, and he "has been working proactively with a mental health counselor to ensure he is getting the care he needs and has a support network in place once released." *Id.* at 5-6.

## III.   LEGAL STANDARD

"Compassionate release is a narrow exception to the general rule of finality in sentencing." *United States v. Trenkler*, No. 21-1441, 2022 U.S. App. LEXIS 24290, at *9-10 (1st Cir. Aug. 29, 2022) (citing *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir.

2021)).  "Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction.'"  *United States v. Ruvalcaba*, 26 F.4th 14, 18 (1st Cir. 2022).  "It is the 'extraordinary and compelling' criteria for compassionate release that promises this general rule [of finality] will not be superseded by the exception."  *Trenkler*, 2022 U.S. App. LEXIS 24290, at *10 (citing *Ruvalcaba*, 26 F.4th at 23).  "To grant the motion, the district court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction, . . . and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"  *Id.* at 18-19 (quoting § 3582(c)(1)(A)).

The United States Sentencing Commission's current policy guidance[3] for addressing compassionate release motions brought by the Director of the BOP, issued pursuant to Guideline § 1B1.13, "was last modified in November of 2018—before the F[irst] S[tep] A[ct] (FSA) amended the compassionate-release statute to allow for prisoner-initiated motions."  *Id.* at 20.  In *Ruvalcaba*, the First Circuit resolved that district courts are not constrained by the Sentencing Commission's 2018 policy statement in adjudicating prisoner-initiated motions for compassionate release.  *Id.* at 22-23 (emphasizing that § 603(b) of the FSA "effected a paradigm shift in how compassionate release would function" and that "[g]iven the profound nature of this

---

[3]      The Sentencing Commission's list of "four categories of extraordinary and compelling reasons: medical conditions; age; family circumstances; and a catch-all for other reasons deemed appropriate by the BOP. . . remains unchanged today."  *Ruvalcaba*, 26 F.4th at 20 (citing U.S.S.G. § 1B1.13 cmt. n.1 (A) – (D)).  "[S]ection 1B1.13 also requires a finding that the defendant is not dangerous in order to grant compassionate release based on extraordinary and compelling reasons."  *Id.* at 19-20 n.5.

paradigm shift, it is fair to say that the 'purposes' and 'appropriate use' of the compassionate-release statute have swelled beyond those that inhered in the statute when the Sentencing Commission issued its original policy statement").

The First Circuit clarified that the absence of an applicable policy statement does not leave the district court's discretion "unbounded," rather it remains "circumscribed by statutory standards, which obligate the district court to find a reason that is both 'extraordinary and compelling.'" *Id.* at 23 (citing *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021) ("[T]he 'extraordinary and compelling' standard is logically guided by the plain meaning of those terms")). "[M]oreover, the current policy statement—though not 'applicable'—nonetheless may serve as a non-binding reference." *Id.*

Thus, until the Sentencing Commission issues updated guidance applicable to prisoner-initiated motions, "the district courts will have to assess prisoner-initiated motions for compassionate release primarily through the lens of the statutory criteria." *Id.* at 24. "Ultimately, . . . it is within the district court's discretion— constrained only by the statutory criteria[4] and any applicable policy statement—to make that [individualized assessment of a myriad of factors], case by case." *Id.* at 27-28. A court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Id.* at 28.

---

[4] The only "explicit limitation on what may comprise an extraordinary and compelling reason" is "that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 25 (alterations in *Ruvalcaba*) (quoting 28 U.S.C. § 994(t)).

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, "the district court must [also] consider any applicable section 3553(a) factors," *id.* at 19, to "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *Saccoccia*, 10 F.4th at 4 (omission in *Saccoccia*).  In particular, before granting the petition, a court must assess,

> [t]he nature and circumstances of the offense and the history and characteristics of the defendant, the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).  "Though the [§] 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 10 F.4th at 8.

The movant bears the burden of proving that he is entitled to a sentence reduction, and the Court has discretion to determine whether "the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) (quoting *Saccoccia*, 10 F.4th at 4); *see Saccoccia*, 10 F.4th at 4 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

11

## IV.   DISCUSSION

### A.   Extraordinary and Compelling Reasons

To grant Mr. Soto's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. Mr. Soto submits that his underlying health conditions combined with the risk of contracting COVID-19 create such a circumstance warranting a sentence reduction. *Def.'s Mot.* at 6.

The Court first considers Mr. Soto's current health status and risk profile. Mr. Soto claims that he suffers from obesity, depression, and hypertension and attaches a BOP health report reflecting these conditions. *Id.* at 3; *id.*, Attach. 1, *Bureau of Prisons Health Services Clinical Encounter*, at 1-2 (*Soto BOP Med. R.*). However, the evidence that he suffers from all these conditions is largely uncorroborated and appears in one case to be inaccurate.

Turning first to obesity, the CDC defines overweight as having a BMI of 25 or more, obesity 30 or more, and severe obesity 40 or more. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 25, 2022) (*COVID Med. Conditions*). In his motion, Mr. Soto claims that he is 5 feet 9 inches tall and weighs 200 pounds, resulting in a BMI of 30. *Def.'s Mot.* at 2. But his height assertion is uncorroborated and appears incorrect. The medical record gives his height at 70 inches, which is 5'10" tall, not 5'9" as he is asserting. *Soto BOP Med. R.* at 2. The PSR also lists his height at 5'10". *Main Doc.*, Attach. 3, *Presentence*

*Investigation Report* ¶ 57 (*PSR*).  At 5'10" and 200 pounds, Mr. Soto has a BMI of 28.7, which places him in the overweight, not obese category.  Moreover, it appears that Mr. Soto has recently gained weight.  In February 2021 and March 2021, he weighed 194 pounds and it was in October 2021 that he weighed 200.[5]  If the Court assumes that he will resume his more normal weight of 194, his BMI would be 27.8, which is closer to the normal range, which begins at 24.9.  In his amended motion, he says that he has gained weight since October 2021, *Def.'s Mot.* at 6 n.1, and, if so, the gain would make him more susceptible.

The CDC includes all three overweight categories–overweight, obese, and severely obese–as risk factors for COVID.  *CDC COVID Med. Conditions.*  Even though being in any one of these weight categories can place a person at greater risk from COVID, the CDC stresses that the "risk of severe illness from COVID-19 increases sharply with higher BMI."  *Id.*  Here, if Mr. Soto still weighs 200 pounds, he is at a very slightly increased risk of severe illness from COVID and if he has resumed his winter weight of 194 pounds, he is not at increased risk from his weight.

Additionally, in his motion, Mr. Soto asserts that he has depression and hypertension.  For depression, he cites the PSR, which reads that "he believes he has suffered from depression his entire life."  *PSR* ¶ 58.  The PSR says that while at county jail, he was prescribed Remeron, which was helpful in regulating his sleep and mood.  *Id.*  The October 28, 2021, BOP medical record that Mr. Soto attached does not mention depression and, instead, describes him as "pleasant" and "cooperative."  *Soto*

---

[5]      The PSR has his weight at 240 pounds.  *PSR* ¶ 57.  However, as the Court is dealing with his demand for release now, it accepts 5'10" and 200 pounds as the correct BMI.

*BOP Med. R.* at 1.  According to the CDC, having depression can make a person more likely to get very sick from COVID.  *CDC COVID Med. Conditions.*  The Court accepts Mr. Soto's view that he suffers from depression but notes that he may or may not currently fit within a mental health diagnosis of depression, and, as a consequence, may or may not be at higher risk from COVID.

The PSR also mentions anxiety, bipolar disorder, and ADHD.  In its description of risk factors, the CDC mentions mood disorders, which may include bipolar disorder, but not anxiety and ADHD.  *CDC COVID Med. Conditions*; *https://www.mentalhealth.gov/what-to-look-for/mood-disorders* (last visited Sept. 25, 2022).  Based on this record, the Court assumes that Mr. Soto has depression and may have bipolar disorder, both of which may place him at greater risk from COVID.  However, the Court has also considered that none of his psychiatric conditions currently requires medication, which places him on the lower side of the risk scale.

Regarding hypertension, the CDC guidance is more equivocal.  The CDC says that "possibly high blood pressure (hypertension) can make you more likely to get very sick from COVID-19."  *CDC COVID Med. Conditions.*  This advice is distinct from other heart conditions such as heart failure, coronary artery disease, and cardiomyopathies, which the CDC lists as making it more likely to get very sick from COVID-19.  *Id.*  Mr. Soto's October 28, 2021, BOP medical record confirms his hypertension diagnosis.  *BOP Med. R.* at 1-2.  But Mr. Soto was not taking medication for his high blood pressure at the time, and it appears that the BOP medical record that he has supplied has been truncated because it contains only two pages and there

14

is no diagnosis or treatment plan. *Id.* The Court assumes that Mr. Soto has hypertension, which places him at higher risk of serious illness from COVID-19, but cannot assess the degree of higher risk, based on the record before the Court.

Relevant to all medical conditions, the CDC notes that "[o]lder adults are at highest risk of getting very sick from COVID-19 . . . The number of deaths among people over age 65 is 97 times higher than the number of deaths among people ages 18-29 years." *Id.* Mr. Soto is now 30 years old and is therefore not at greater risk due to his age.

Based on the sparse medical record in this case and the CDC guidance, the Court finds that Mr. Soto is at somewhat greater risk than the average young inmate without any CDC-listed medical conditions of suffering a severe illness should he contract COVID-19. But the medical evidence that Mr. Soto has marshaled is equivocal and at 30 years of age, Mr. Soto has not presented a convincing case that he is significantly at risk for severe health consequences from COVID-19.

Despite his increased risk, however, Mr. Soto's medical conditions do not present an "extraordinary and compelling" reason for early release. The First Circuit has explained that "not every complex of health concerns is sufficient to warrant compassionate release[, and] this remains true even in the midst of the COVID-19 pandemic." *Saccoccia*, 10 F.4th at 5. "It is only if 'the defendant's situation constitutes the type of 'extreme hardship' that the compassionate-release statute is designed to ameliorate' that a sentence reduction is warranted." *United States v.*

15

*Sealy*, No. 2:16-cr-00036-NT, 2022 U.S. Dist. LEXIS 22449, at *6 (D. Me. Feb. 8, 2022) (quoting *Saccoccia*, 10 F.4th at 4).

While the Court is aware of the dangers of COVID-19, especially for individuals with existing health conditions, Mr. Soto's risk, based on the conditions he has alleged, does not warrant release. *See United States v. Cooke*, No. 20-cr-10126-ADB, 2022 U.S. Dist. LEXIS 103911, at *7 (D. Mass. June 10, 2022) (collecting cases in which district courts across the country have found that even with the presence of medical conditions that increase an inmate's risk of serious illness from COVID-19, the risk of contracting COVID-19 alone is not sufficient to warrant early release). Moreover, there is nothing in the record to indicate that Mr. Soto's medical conditions are not, or cannot be, well managed within FCI Berlin.

The Court recognizes that COVID-19 has impacted Mr. Soto's access to education and work and that he and other inmates have spent a significant amount of time isolated to prevent the spread of the virus. *Def.'s Mot.* at 15.  However, "the pandemic, and its subsequent natural impacts in and of themselves do not present an 'extraordinary and compelling' justification for [an inmate's] release." *United States v. Stone*, No. 1:08-cr-00006-JAW, 2021 U.S. Dist. LEXIS 213599, at *20 (D. Me. Nov. 4, 2021); *see also United States v. Davis*, No. 2:15-cr-00186-GZS, 2021 U.S. Dist. LEXIS 171136 at *3 (D. Me. Sept. 9, 2021) ("The Court acknowledges that the ongoing pandemic is an extraordinary event for our entire country and has been especially challenging for the Bureau of Prisons.  However, it is against this backdrop that a defendant must show individualized extraordinary and compelling reasons why he

16

should not be required to serve the remainder of his sentence").  Of course, as time goes by and the pandemic becomes endemic, the impact of COVID-19 on BOP operations may be less dramatic.

The Government argues that Mr. Soto's "refusal to accept the COVID-19 vaccine undercuts the presence of 'extraordinary and compelling' circumstances for a sentence reduction." *Gov't's Opp'n* at 6.  As this Court recently explained in *United States v. Greenlaw*, No. 1:18-cr-00098-JAW-06, 2021 U.S. Dist. LEXIS 66670 (D. Me. Apr. 6, 2021), "an inmate's vaccination refusal–without more–should be considered a factor, among others, against granting a motion for compassionate release if the motion is based on an inmate's risk of contracting COVID-19 while in prison." *Id.* at *18 n.6.  *See also United States v. Pelletier*, No. 2:12-cr-00119-GZS, 2021 U.S. Dist. LEXIS 76078, at *5 (D. Me. Apr. 21, 2021) ("[an inmate's] refusal of vaccination does significantly weigh against a finding that he presents extraordinary and compelling circumstances based on his risk of serious illness from COVID-19"); *United States v. Baptiste-Harris*, No. 2:18-cr-00127-NT-1, 2021 U.S. Dist. LEXIS 77657, at *3 (D. Me. Apr. 22, 2021) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release").

Mr. Soto says in his motion that his reluctance to undergo COVID vaccinations is based on his "distrust of medical care provided while incarcerated." *Def.'s Mot.* at 10.  He seeks the opportunity "to consult with a medical provider of his choosing outside the prison environment to better understand the benefits and possible risks."

*Id.* Even assuming his skepticism has some historic basis, the Court is unclear why he has been unable to consult with his private physician and receive his doctor's advice about vaccinations while incarcerated.

Although Mr. Soto's refusal to accept the COVID-19 vaccine weighs against release, this is not a determinative factor here. Because Mr. Soto's underlying health conditions do not present an "extraordinary and compelling" circumstance, the Court need not consider to what degree an inmate's refusal of the COVID-19 vaccine negates the existence of "extraordinary and compelling" health conditions that increase the risk of serious illness from COVID-19.

### B.     The Section 3553(a) Factors

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court has considered whether the § 3553(a) factors justify Mr. Soto's release at this time. They do not. Although the Court considered each factor, the Court discusses only the most pertinent factors: the nature and circumstances of Mr. Soto's offenses, the need to protect the public from future crimes of the defendant, and adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(1).

First, the Court notes the seriousness of Mr. Soto's crime. At sentencing, the Court stated that when "drug dealing, which is itself bad, has caused the death of another human being, [this is] traditionally among the most serious crimes a person can commit." *Sentencing Tr.* 69:14-18. Mr. Soto himself acknowledges that he has been convicted of a "very serious offense." *Def.'s Mot.* at 22. In the Court's view, a

crime resulting in an innocent death merits considerable punishment.  This weighs heavily against Mr. Soto's release.

Notwithstanding the fact that Mr. Soto has completed all the educational and mental health programming available to him, the Court also considered the need to protect the public and the need for deterrence.  In instances such as this where the defendant is involved in a serious crime, the completion of a substantial sentence is necessary to reflect its seriousness, deter the defendant from committing similar conduct upon release, and prevent others from engaging in comparable criminal behavior.  A person lost his life as a result of Mr. Soto's criminal behavior, and the Court does not take lightly this gravest of outcomes as it weighs the § 3553(a) factors.

Mr. Soto has only served approximately one quarter of his sentence.  Moreover, Mr. Soto has already received the benefit of a substantially reduced sentence of 228 months of incarceration from the guideline range of 360 to 720 months.  The fact that Mr. Soto has not yet served a significant portion of his already reduced sentence as compared to the guidelines weighs against release.  *See United States v. Patten*, 560 F. Supp. 3d 613, 618 (D.N.H. 2021) (specifying that because the defendant "has served a significant portion of his original sentence and is nearing his release date from BOP, a reduction in his sentence would not be inconsistent with the goals of promoting . . . deterrence").  The Court finds that serving only a quarter of this sentence does not reflect the seriousness of the crime and would not be sufficient to achieve general and specific deterrence.

In his motion, Mr. Soto repeatedly mentions the disparity between his sentence of 228 months and the co-defendant in his case.[6]  *Def.'s Mot.* at 19-20.  He says that it did not escape him that he was the only person of color in the motor vehicle, and it did not escape him that the Court "laid the responsibility of the death solely at his feet."  *Id.* at 20.  Mr. Soto's allegations against the Court are grossly inaccurate and the Court corrects the record.

The Court did not make the charging decisions in these cases.  It did not decide to charge Trevor Teves, the other passenger in the motor vehicle, only with a firearms offense and not with a drug offense, and the Court had no role in the Government's prosecutorial decision not to charge Amy Whitney at all.  *See United States v. Teves*, 2:17-cr-149-JAW, *Indictment* (ECF No. 1).  Nor did it decide to charge Mr. Soto initially with distribution of fentanyl resulting in death, which would have imposed a twenty-year mandatory minimum with a maximum of life imprisonment. *Indictment* at 1 (ECF No. 32); *see* 21 U.S.C. § 841(b)(1)(C).  The Court did not participate in the negotiations between the Government and defense counsel that resulted in the dismissal of the "resulting in death" count and the elimination of the mandatory minimum statutory sentence.  *See Superseding Indictment* at 1 (ECF No. 112).  The Court did not negotiate the plea agreement that imposed a Federal Rule of Criminal Procedure 11(c)(1)(C) range of 192 to 288 months of incarceration for Mr. Soto.  *Agreement to Plead Guilty* (*With Stips. and Appeal Waiver*) at 2 (ECF No. 120).

---

[6]     In his motion, Mr. Soto says that he was sentenced to 229 months.  *Def.'s Mot.* at 19 (Mr. Soto "received a sentence of nineteen years, 229 months").  This is slightly incorrect.  The sentence was 228 months.  *J.* at 2 (ECF No. 180).

Regarding the accusation that the Court "laid the responsibility of the death solely at [Mr. Soto's] feet," this is false.  It was not the Court; it was Mr. Soto and the Government who presented the Court with a plea agreement that contained the following agreement:

> 3. Agreement Regarding Defendant's Conduct.  The defendant admits that his conduct giving rise to the offense of conviction on Count Two of the Superseding Indictment was the "but for" cause of the overdose death of E.R.

Id.; see Stip. (ECF No. 135).  No other defendant appeared before the Court who accepted "but for" responsibility for the death of Edward Rogers or for that matter had anything to do with Mr. Rogers' death.[7]

What the Court did at Mr. Soto's sentencing hearing is it considered numerous aggravating factors in arriving at its sentence, including that Mr. Soto was the drug dealer who sold the fatal fentanyl to Mr. Rogers, the guideline range of 360 to 720 months of incarceration, Mr. Soto's position as a professional drug dealer without any evidence of significant work other than drug dealing, his substantial criminal record with a criminal history category of V, his release from Maine prison for a separate drug dealing conviction within a few months of his fatal sale, and his callous response to news of Mr. Rogers' death.  The Court also considered several mitigating factors,

---

[7]     In his memorandum, Mr. Soto asserts that Mr. Teves "was involved in the sale of drugs which then ultimately caused a death." Def.'s Mot. at 20.  If so, Mr. Soto's counsel knows something the Court does not.  The Court told Mr. Teves that he came to Maine with Mr. Soto to sell drugs, but the Court is not aware of any evidence that Mr. Teves was involved in the sale of drugs to Mr. Rogers that resulted in Mr. Rogers' death.
        In his memorandum, Mr. Soto also asserts that it "does not go unnoticed by Mr. Soto that he was the only person of color in the vehicle at the time of the arrest." Id.  The Court firmly rejects the defense implication that it treated Mr. Soto differently because of his race.  In fact, the PSR describes Mr. Soto as white and Hispanic, and the medical record that he provided also describes him as white.

including his relative youth, his difficult upbringing, his willingness to plead guilty and accept responsibility, and his paying restitution to the victim's family.  The Court then sentenced Mr. Soto to 228 months on the lower end of the Rule 11(c)(1)(C) range of 192 to 288 months, a sentence that struck the Court at the time and still does as just and reasonable to Mr. Soto.

Mr. Soto quotes the Court's comments at Mr. Teves' October 3, 2018 sentencing hearing,[8] which it held before it had sentenced Mr. Soto, regarding the disparity between his sentence and Mr. Soto's potential sentence, but the Court's comments related to the minimal punishment against Mr. Teves, not the justness of Mr. Soto's potential sentence.  Apart from the different charges between Mr. Soto and Mr. Teves and their markedly different criminal histories (Mr. Soto a criminal history category V and Mr. Teves a criminal history category I), the major difference between Mr. Soto and Mr. Teves is that, even though Mr. Teves accompanied Mr. Soto to Maine to sell drugs, there was no evidence that Mr. Teves was involved in the sale of Fentanyl to Mr. Rogers that resulted in Mr. Rogers' death.

On balance, the 18 U.S.C. § 3553(a) factors do not weigh in favor of Mr. Soto's release.

### C.    Home Confinement

Mr. Soto, in the alternative, requests that for the same COVID related reasons discussed above, the Court "modify his sentence to allow for home confinement."

---

[8]      It appears that Mr. Soto has a transcript of the Court's October 3, 2018 sentencing hearing of Mr. Teves since Mr. Soto quotes from it.  There is no such transcript in the docket entries of Mr. Teves' case.  The Court accepts Mr. Soto's quotation as accurate.

*Def.'s Mot.* at 23-24.  He submits that the BOP is authorized to transfer him to home confinement pursuant to the CARES Act, and contends that the Court, under 18 U.S.C. §§ 3624(c) and 3621(b)(4), has the authority to "recommend where a defendant should be incarcerated" and that "nothing prevents [the Court] from doing so at any time the inmate is still serving his sentence."  *Id.* at 26.  He thereby requests the Court to do so now.

The Court, however, does not have the authority that Mr. Soto submits it does to modify his sentence to allow for home confinement.  In *Texeira-Nieves*, the First Circuit noted that despite the "wide sweep" of the compassionate release provision, "the statute does not specifically grant a district court authority to change the site of a defendant's confinement."  23 F.4th at 58.  The First Circuit elaborated that "[t]he statute's silence on this point comports with the BOP's 'plenary control . . . over the place of the prisoner's imprisonment,'" *id.* (quoting *Tapia v. United States*, 564 U.S. 319, 331 (2011)), and concluded that the lack of "any reference to modifying a defendant's location of confinement denotes that section 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home."  *Id.* at 59.  This Court, therefore, does not have the authority to modify Mr. Soto's sentence, as he requests, to allow for home confinement.

Citing 18 U.S.C. § 3624(c) and § 3621(b)(4), Mr. Soto asserts that the Court retains the authority to make a recommendation to the BOP about where he should be incarcerated and, if the Court cannot order his release to home confinement, he urges the Court to recommend that BOP transfer him to home confinement.  *Def.'s*

*Mot.* at 23-26.  The Court is dubious.  Section 3624(c) clearly gives the authority to place an inmate in home confinement not to the sentencing judge, but to the BOP. Section 3621(b) also clearly places the authority to designate the place of imprisonment to the BOP.  Section 3621(b)(4) provides that the BOP may consider any statement by the sentencing judge recommending the type of penal institution or correctional facility.  These recommendations are common at the imposition of a defendant's sentence, but the Court does not read this provision as allowing a judge to interfere with the BOP's designation decision long after the imposition of sentence. Furthermore, even if the cited provisions could allow a court to do so (which is doubtful), the Court in this case declines to make a recommendation for home confinement for Mr. Soto for the reasons it has discussed.

### D.    Summary

The Court concludes that Mr. Soto has not met his burden to show extraordinary and compelling reasons for compassionate release, nor do the § 3553(a) factors support release.  The Court finds that while his medical conditions may heighten his risk from COVID-19, they do not present a "compelling and extraordinary" circumstance, and the Court finds that releasing Mr. Soto early would contravene the § 3553(a) factors.  On the record before the Court, Mr. Soto is not an appropriate candidate for compassionate release.

## V.    CONCLUSION

The Court DISMISSES without prejudice Cameron Soto's Motion for Compassionate Release (ECF No. 217).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2022.